JOURNAL ENTRY AND OPINION
{¶ 1} Sixteen-year-old J.M.[1] appeals from his conviction in juvenile court of one count of rape and claims the court erred in finding the alleged victim competent to testify, in admitting hearsay evidence, and in denying him access to exculpatory evidence. He further alleges that his conviction was supported by insufficient evidence, that it was against the manifest weight of the evidence, and that he was denied the effective assistance of counsel. We reverse and remand for a further competency hearing.
 {¶ 2} The record reveals that in early October 2004, eleven-year-old B.D. went to her school nurse to be treated for head lice. While a student nurse was examining her, B.D. reportedly told her about sexual activity between her and her stepbrother, then fifteen-year-old J.M. When the school nurse, Ms. Hernandez, entered the room, the student nurse prompted B.D. to repeat what she had just said. Ms. Hernandez then asked B.D., "[h]as anyone ever touched your private parts?" (Tr. Sept. 30, 2004, at 97) Although B.D. at first responded "no" when questioned, she then reportedly claimed that J.M. had been touching her private parts and had been squeezing and touching her chest. (Tr. Sept. 30, 2004, at 9) Ms. Hernandez contacted the Cuyahoga County Department of Children and Family Services and reported what she had been told.
 {¶ 3} An investigation commenced, and on October 17, 2003, J.M. was charged with two counts of what would be rape if committed by an adult, in violation of R.C. 2907.02(A)(1)(b), and R.C. 2907.02(A)(1)(a).
 {¶ 4} Following a bench trial, J.M. was found delinquent on the first count of rape and the second count was dismissed. He was sentenced to a minimum of one year in juvenile detention, with a maximum sentence to his twenty-first birthday. He appeals from this conviction in the assignments of error set forth in the appendix of this opinion.
 {¶ 5} In his first assignment of error, J.M. contends that the juvenile court erred in finding B.D. competent to testify. We find this assignment of error dispositive because of the incomplete nature of the competency hearing.
 {¶ 6} Evid.R. 601(A) provides that "[e]very person is competent to be a witness except: [t]hose of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." The rule favors competency and confers it even on those who do not benefit from the presumption, such as children under the age of ten, provided they are shown to be capable of receiving just impressions of the facts and transactions respecting which they are examined and capable of relating them truly. See Turner v.Turner, 67 Ohio St.3d 337, 343, 1993-Ohio-176.
 {¶ 7} In State v. Clark, 71 Ohio St.3d 466, 469,1994-Ohio-43, the Supreme Court of Ohio stated as follows:
"The presumption established by Evid.R. 601(A) recedes inthose cases where a witness is either of unsound mind or underthe age of ten. In such cases, the burden falls on the proponentof the witness to establish that the witness exhibits certainindicia of competency. This court established a test fordetermining competency in State v. Frazier (1991),61 Ohio St.3d 247, 574 N.E.2d 483, syllabus, certiorari denied (1992),503 U.S. 941, 112 S.Ct. 1488, 117 L.Ed.2d 629. There, we heldthat in determining whether a child under ten is competent totestify, the trial court must take into consideration: thechild's ability to receive accurate impressions of fact, thechild's ability to recollect those impressions, the child'sability to communicate what is observed, the child'sunderstanding of truth and falsity, and the child's appreciationof his or her responsibility to tell the truth. Once a trialjudge concludes that the threshold requirements have beensatisfied, a witness under the age of ten will be deemedcompetent to testify."
 {¶ 8} In State v. Said, 71 Ohio St.3d 473, 476,1994-Ohio-402, the Ohio Supreme Court again cited its decision inState v. Frazier (1991), 61 Ohio St.3d 247, and held:
"Competency under Evid.R. 601(A) contemplates severalcharacteristics. See State v. Frazier * * *. Thosecharacteristics can be broken down into three elements. First,the individual must have the ability to receive accurateimpressions of fact. Second, the individual must be able toaccurately recollect those impressions. Third, the individualmust be able to relate those impressions truthfully."
 {¶ 9} It is well-settled that, as the trier of fact, trial judges are required to make a preliminary determination as to the competency of all witnesses, including children, and that absent an abuse of discretion, competency determinations of the trial judge will not be disturbed on appeal. Clark, supra, at 469;Frazier, supra, at 251.
 {¶ 10} A court conducting a voir dire to determine competency is not chained to a ritualistic formula to ask specific questions, but the court must satisfy itself of the elements enumerated in Frazier, supra. See State v. Swartsell, Butler App. No. 2002-06-151, 2003-Ohio-4450. After conducting the voir dire examination, the trial court may rule on the competency of the witness, keeping in mind whether the witness's mental impairment substantially negates the trustworthiness of his or her testimony. See Huprich v. Paul W. Varga Sons, Inc.
(1965), 3 Ohio St.2d 87, 91, overruled in part on other grounds.
 {¶ 11} As long as a witness understands the oath, or has the mental capacity sufficient to receive just impressions of the facts and transactions relating to what he or she is being questioned upon, then he or she is competent to testify at trial.State v. Bradley (1989), 42 Ohio St.3d 136, 140-141. See, also,State v. Wildman (1945), 145 Ohio St. 379, paragraph three of the syllabus.
 {¶ 12} The second count of the complaint against J.M. alleged rape, in violation of R.C. 2152.02(F). It charged J.M. with engaging in sexual conduct with B.D. when "her ability to resist or consent was substantially impaired because of a mental or physical condition * * *." Although this second count was dismissed following the bench trial, it showed an early indication questioning B.D.'s physical or mental condition.
 {¶ 13} The issue of competency also arose prior to trial, and, before allowing B.D.'s testimony, the trial court proceeded to conduct a voir dire examination to clarify any remaining competency issues. At this hearing, B.D. was asked a series of questions where the court used two stuffed animals to illustrate the questions. The stated purpose of the questions was to determine B.D.'s capacity to differentiate between the truth and a lie.
 {¶ 14} Following this questioning, the court found that B.D. did in fact understand the difference between the truth and a lie, but continued to question her capacity for understanding. The following exchange took place:
"THE COURT: * * * [B.D.], do you know what month it is?
 THE WITNESS: Not really.
 THE COURT: Not really. Do you know what year it is?
 THE WITNESS: Like the 30th.
 THE COURT: The 30th?
 THE WITNESS: Um-humm.
 THE COURT: The day is the 30th. All right. Do you know whatmonth it is?
 THE WITNESS: 2004.
 THE COURT: 2004 is the year. Okay. Do you know what month itis? Is it May or June or September or December?
 THE WITNESS: I forget.
 THE COURT: You forget. Okay.
 THE WITNESS: Um-hmm.
 THE COURT: All right. Do you know what country this is?
 THE WITNESS: Cleveland, Ohio.
 THE COURT: That's the city and the state. Do you know whatcountry this is? Is it China?
 THE WITNESS: No.
 THE COURT: Where are we?
 THE WITNESS: In Cleveland.
 THE COURT: Cleveland. That's true. We are in Cleveland."
(Tr., Sept. 30, 2004, at 27-28)
 {¶ 15} Counsel for J.M. then requested that the court question B.D. as to the difference between real and imaginary. The court again used the stuffed animals for illustration and asked B.D. a series of questions relating to real and imaginary statements made about the animals. B.D. appeared to answer all questions correctly. The court then found B.D. competent and allowed the prosecution to question her. We find that such a hearing, in light of the trial court's failure to further question B.D. regarding her capacity for understanding, was insufficient to determine the competency of a vital witness.
 {¶ 16} The limited nature of the competency hearing was further called into question by contradictory statements that B.D. made at trial. B.D. testified that in October 2003, she had just come home from school when J.M. asked her to go to her room and think of a game that the two of them could play together. (Tr. Sept. 30, 2004, at 44) Shortly thereafter, J.M. came to her room, naked, and told her that he had thought of a game called "sex" that they could play. (Tr., Sept. 30, 2004, at 44) B.D. testified that she had never heard of this game before and told her stepbrother that she did not want to play. Instead of listening, she claimed that J.M. pulled off her clothes and covered her mouth to prevent her from screaming and then raped her. (Tr. Sept. 30, 2004, at 45-47) B.D. then used anatomically correct dolls to describe what J.M. had done, specifically stating that J.M. put his "private" into her "private." (Tr. Sept. 30, 2004, at 50)
 {¶ 17} Under cross-examination at this same hearing, counsel for J.M. attempted to illustrate B.D.'s incapacity to relate basic information, and the following exchange took place:
Q: Okay. Did you know that the month that we're in isDecember? Have you ever heard of that month before?
 A: Yeah.
 Q: Are we in the month — we're in the month of December,aren't we?[2]
 A: Yeah, I think so.
 Q: Okay. And Christmas is coming up in a couple weeks, right?
 A: Yep.
 Q: Okay.
* * *
Q: Who was your teacher last year?
 A: I think it — I'm not real good with my teacher's name.
 Q: You're not?
 A: No.
 Q: You don't remember your teacher's name?
 A: No.
 Q: Do you remember telling somebody that her name was Mrs.Washington last year?
 A: No. That might be the name. I just don't remember myteacher's name being Mrs. Washington.
 Q: Washington?
 A: No.
 Q: Was it Miss Jones?
 A: No, I don't think so."
(Tr. Sept. 30, 2004, at 57-58)
 {¶ 18} When counsel then asked her to refer to her trip to the hospital for an examination following her allegations, B.D. stated the following:
"Q: Did your friend Brittany go with you?
 A: No, she had to watch her little sisters.
 Q: What's [sic] their names?
 A: Their names is [sic] Maggie and Allison.
* * *
Q: Why don't you tell me a little more about your friend MissBrittany.
 A: Well, she was imaginary.
 Q: She what?
 A: She was my pretend friend for a while because I didn't havemany friends in school.
 Q: Okay. And is that who you were talking about when you weretalking about your friend Brittany?
 A: Um-hmm. (Tr. Sept. 30, 2004, at 59)
 Q: You used the word "rape" before.
 A: Yes.
 Q: Where have you heard that word before?
 A: No where.
 Q: You don't remember hearing the word "rape" before?
 A: Uhn-uhn.
 Q: It just came to you in the middle of the night while youwere sleeping? You go, Ah, that's a good word?
 A: I just thought it meant what [J.M.] did to me, and I guessI should make up — I thought, well, I'll use a make-believe wordto clarify what he did to me.
 Q: Oh, so rape is a made-up word?
* * *
A: Um-hum.
 Q: So it's like an imaginary word?
 A: Yes."
(Tr. September 30, 2004, at 81-82)
 {¶ 19} Further testimony regarding B.D.'s ability level came first from the testimony of the school nurse, Ms. Hernandez, who stated that B.D. was a special education student who was included in a fourth grade regular education class. (Tr. Sept. 30, 2004, at 94) B.D.'s mother then testified as to her daughter's imaginary friends and her previous medical diagnosis:
"Q: Can you tell me about [B.D.'s] imagination?
 A: I was the one actually who brought it to the school'sattention about the imaginary friend. I made the statement to[sic] Social Workers and to school personnel that it's normal tohave an imaginary friend. My next-to-oldest son had one until hisbrother was born, somebody to play with. But Brittany hadseveral, and it struck me as very strange, and that she probablyneeded help, and I've continuously had requests to help fromschools, counselors, teachers from about —
 Q: Was she diagnosed —
 A: Her first diagnosis was schizophrenic.
* * *
Q: And what was any subsequent findings?
 A: Counselor — another therapist had taken over. She said shewasn't sure if that was a correct diagnosis, because it was animaginary friend, or several imaginary friends, and if one isnormal, maybe several are, and they continued the counseling, andI don't know what their findings were after that.
 Q: Was she ever placed on medication?
 A: [B.D.] was placed on Zoloft, yeah."
(Tr. Sept. 30, 2004, at 153-154)
 {¶ 20} Further, according to the medical report prepared by Dr. Curt D. Meinecke, M.D., an interview with B.D. revealed that B.D.'s recollection of the "sex" game included J.M. kissing her mouth, breasts and "private area," but goes on to state that "she denies that he has put his privates [sic] parts in her, but says that she thinks he might have done this at some point when she was sleeping as he has been threatening to do that to her." The report continued that, "The patient notes that this game called sex has occurred up to 4 times a week since she was in the second grade. She is now in the fifth grade."
 {¶ 21} Prior case law establishes that a twelve-year-old with average cognitive abilities is presumed competent to testify, however, due to the limited nature of the competency hearing, this Court cannot conclude that an adequate determination of B.D.'s competency was made. Evidence in the record is replete with indications that B.D. was in special education classes, that she had and continues to have imaginary friends, that she had at least one past diagnosis of schizophrenia, and that her ability to recollect even routine information such as the day, month, and year was severely limited.
 {¶ 22} There is no indication in the record that the court questioned B.D. regarding her capacity to recount the events accurately or even that she understood the nature of the proceedings. After the trial court questioned B.D. regarding routine questions such as the day, month, and year and received inaccurate or confusing responses from her, the court merely proceeded to the next set of questions without delving further into the key issue of competency.
 {¶ 23} The lack of more detailed evidence supporting or refuting B.D.'s competency should be clear on the record. Since such evidence is lacking, we find that the trial court abused its discretion in failing to conduct a more complete competency hearing.
 {¶ 24} Although the dissent takes issue with the majority opinion's use of State v. Clark, supra, and contends that it stands for the proposition that a child witness who is ten years or older at the time of trial is presumed competent to testify, the holding in Clark actually states:
"A trial judge, in the exercise of his or her discretion, maychoose to conduct a voir-dire examination of a child witness whois ten years of age or older if the judge has reason toquestion the child's competency. The decision not to voir direa child witness under such circumstances will be viewed under anabuse-of-discretion standard. In such circumstances, absent acompelling reason to act otherwise, the failure to conduct avoir-dire examination of a child witness who is ten years of ageor older at the time of trial will not constitute reversibleerror."
 Clark, supra, paragraph two of the syllabus. (Emphasis added.)
 {¶ 25} It is therefore evident from a full citation of the syllabus that a child's competency, regardless of age, may also be at issue and therefore necessitate a voir dire examination. This was precisely the case with B.D. The record is replete with indications questioning B.D.'s competency, which is first indicated by the preliminary request for a competency hearing. Based on our determination as to J.M.'s first assignment of error, we find the remaining assignments of error moot.
 {¶ 26} We therefore reverse the decision of the trial court and remand this case to the trial court to conduct a complete competency hearing.
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., P.J., concurs.
 ROCCO, J., DISSENTS (SEE SEPARATE DISSENTING OPINIONATTACHED).
 APPENDIX ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED WHEN IT FOUND [B.D.] COMPETENT TOTESTIFY. EVID.R. 601(A); STATE V. CLARK, 71 OHIO ST.3D 466,471,1994 OHIO 43, 644 N.E.2D 331 FIFTH AND FOURTEENTH AMENDMENTS,UNITED STATES CONSTITUTION; ARTICLE I, SECTION 16, OHIOCONSTITUTION. (SEPT.30, 2004), T.PP. 33, 36).
 II. THE TRIAL COURT VIOLATED [J.M.'S] RIGHT OF CONFRONTATIONBY ALLOWING HEARSAY EVIDENCE IN VIOLATION OF OHIO RULES OFEVIDENCE 801(C) AND 802, THE SIXTH AMENDMENT TO THE UNITED STATESCONSTITUTION, AND SECTION 10, ARTICLE 1 OF THE OHIOCONSTITUTION.
 III. THE TRIAL COURT VIOLATED [J.M.'S] RIGHT TO DUE PROCESSUNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATESCONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, ANDJUV.R. 29(E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF RAPE ABSENTPROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT,COMPETENT AND CREDIBLE EVIDENCE.
 IV. THE TRIAL COURT VIOLATED [J.M.'S] RIGHT TO DUE PROCESSUNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATESCONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHENIT ADJUDICATED HIM DELINQUENT OF RAPE, WHEN THAT FINDING WASAGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 V. [J.M.] WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVEASSISTANCE OF COUNSEL. SIXTH AND FOURTEENTH AMENDMENT TO THEUNITES STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OFTHE OHIO CONSTITUTION.
 VI. [J.M.] WAS DENIED HIS RIGHTS TO DUE PROCESS OF THE LAW ANDTO A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THEUNITED STATES CONSTITUTION; ARTICLE I, SECTION 16 OF THE OHIOCONSTITUTION; CRIMINAL RULE 16(E); AND JUVENILE RULE 24(C) WHENHIS COUNSEL WAS DENIED ACCESS TO EXCULPATORY INFORMATION."
[1] This Court protects the identity of all juvenile parties.
[2] The record reflects that the date of the questioning wasSeptember 30, 2004.