[Cite as *State v. Crenshaw*, 2020-Ohio-4922.]

[Please see vacated opinion at 2020-Ohio-3183.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 108830 |
| v. | : | |
| INDIA CRENSHAW, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN
PART; AND REMANDED
**RELEASED AND JOURNALIZED:** October 15, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-637721-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Aqueelah A. Jordan, Assistant Prosecuting
Attorney, *for appellee.*

Law Office of Britt Newman and Britt Newman, *for
appellant.*

ON RECONSIDERATION[1]

MARY EILEEN KILBANE, J.:

{¶ 1}  Defendant-appellant, India Crenshaw ("Crenshaw"), appeals from her convictions as well as the denial of her Crim.R. 29 motion for acquittal. Crenshaw was convicted for an incident of alleged child abuse involving her daughter D.T.  For the following reasons, we affirm in part and reverse in part.

**Statement of the Facts**

{¶ 2}  On January 12, 2019, nine-year-old D.T. was visiting Crenshaw's house for the weekend — her parents are divorced.  That day, members of the family were gathered to memorialize Crenshaw's son, who had died several years prior.  At some point during the day, D.T., her cousin, and her stepsister decided to make "slime."  The girls decided to use Crenshaw's hair dye to color the slime, which they used without Crenshaw's permission.  The girls accidentally spilled the slime in the bathroom and did not clean it up.  When Crenshaw discovered the girls had used the hair dye and spilled the slime she became enraged.  She hit D.T. in the head with a kitchen spoon, pushed her head into a wall, and struck her legs with an extension cord three times.  D.T. testified that she did not receive any pain medication from her mother and that she had trouble sleeping that evening.

---

[1]  The original decision in this appeal, *State v. Crenshaw*, 8th Dist. Cuyahoga No. 108333, 2020-Ohio-3183, released on June 4, 2020, is hereby vacated.  This opinion, issued upon reconsideration, is the court's journalized decision in this appeal.  *See* App.R 22(C); see also S.Ct. Prac.R. 7.01.

{¶ 3} The next evening Crenshaw dropped off D.T. at her father's house. D.T. asked her father if he noticed anything wrong with her. Her father said he did not notice anything, though it was dark, and sent her off to bed. The next day, D.T.'s father received a call from her school; they had noticed a bump on D.T.'s forehead and told him she had been complaining about the pain. The school nurse gave D.T. an icepack to help with swelling. D.T.'s father took her to University Hospitals for treatment.

{¶ 4} The emergency room pediatric physician noted that D.T. had multiple bruises on her upper right arm and both legs. D.T. also had a bruise and a five centimeter bump on her forehead. The doctor did not observe any signs of head trauma and did not believe it was necessary to order any tests; she gave D.T. Tylenol to help with pain. D.T.'s father was told to provide Tylenol and ice the area. D.T.'s father did not give her any Tylenol for pain after they returned home.

**Procedural History**

{¶ 5} On March 27, 2019, Crenshaw was indicted on three counts: Count 1, endangering children in violation of R.C. 2919.22(B)(1), a second-degree felony; Count 2, endangering children in violation of R.C. 2919.22(A), a third-degree felony; and Count 3, domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. As to Count 3, the state included a "furthermore clause" which stated that:

> FURTHERMORE, the offender previously had pleaded guilty to or been convicted of Aggravated Assault on or about December 19, 2017,

in the Court of Common Pleas, Cuyahoga County, Ohio, Case No. CR17-620327.

{¶ 6} Pursuant to R.C. 2919.25(D)(3), if the state proved that Crenshaw committed the aggravated assault against a family or household member, her first-degree misdemeanor would be enhanced to a fourth-degree felony.

{¶ 7} On April, 10, 2019, Crenshaw pled not guilty. She waived her right to a jury trial, and all counts were tried to the court on June 19, 2019.

{¶ 8} On June 19, 2019, the court found Crenshaw guilty on all counts.

{¶ 9} On June 19, 2019, the court sentenced Crenshaw to an aggregate sentence of four years. Crenshaw received four years on Count 1 for endangering children; Count 2, endangering children, merged with Count 1 so no sentence was imposed; and on Count 3, domestic violence, Crenshaw received an 18-month sentence. All sentences were to run concurrent. The court also imposed three years of postrelease control.

{¶ 10} This appeal follows.

{¶ 11} Crenshaw presents six assignments of error for our review.

**First Assignment of Error**
The Trial Court Erred in Failing to Determine Whether—year [sic] old Child Witness Was Competent to Testify.

**Second Assignment of Error**
The Trial Court Erred in Denying Appellant's Crim.R. 29 Motion for Acquittal and for convicting her of F-3 Endangering Children (Counts 1&2) Because she did not Cause her Daughter Serious Physical Harm.

**Third Assignment of Error**
The Trial Court Erred in Denying Appellant's Crim.R. 29 Motion for Acquittal and for Convicting her of F-3 Endangering Children (R.C. 2919.22)(A) Because that Section of the Endangering Children Statute

Prohibits Neglect of Duty and there is no Evidence that Appellant did so.

**Fourth Assignment of Error**

The Trial Court Erred in Denying Appellant's Rule 29 Motion for Acquittal and for Convicting her of Domestic Violence Because she has a constitutional Right to Physically Punish her Child and her use of Corporal Punishment was Proper and Reasonable.

**Fifth Assignment of Error**

The Trial Court Erred in Convicting Appellant of F-4 Domestic Violence Because the State Failed to Establish that her Prior Aggravated Assault Conviction was an Enhancing Offense.

**Sixth Assignment of Error**

Appellant was Denied her Right to Effective Assistance of Counsel due to the Cumulative Effect of Defense Counsel's Trial Errors.

{¶ 12} We will address them out of order for ease of discussion.

## Domestic Violence: the Fourth Assignment of Error

The Trial Court Erred in Denying Appellant's Rule 29 Motion for Acquittal and for Convicting her of Domestic Violence Because she has a constitutional Right to Physically Punish her Child and her use of Corporal Punishment was Proper and Reasonable.

{¶ 13} Crenshaw argues that initially she should not have been convicted of domestic violence and, failing that, her Crim.R. 29 motion should have been granted. We disagree.

{¶ 14} Though Crenshaw's assignment of error does not make this explicit, her arguments that we overturn her convictions as well as her Crim.R. 29 motion necessitate both a sufficiency and manifest weight review.

### 1) Crim. R. 29 motion for acquittal and sufficiency of the evidence

{¶ 15} Crim.R. 29(A) states:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion of judgment of acquittal made at the close of the state's case.

{¶ 16} When reviewing a denial of a Crim.R. 29 motion for acquittal we use a sufficiency standard. *State v. Collins*, 8th Dist. Cuyahoga No. 88620, 2007-Ohio-3906, citing *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978).

{¶ 17} The test for sufficiency of the evidence requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St. 3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 18} We note that an affirmative defense of parental discipline is not reviewed under a sufficiency standard. *Westlake v. Y.O.*, 8th Dist. Cuyahoga No. 107226, 2019-Ohio-2432, citing *State v. Simes*, 8th Dist. Cuyahoga No. 103672,

2016-Ohio-7300, ¶ 20 ("[A] sufficiency challenge does not implicate affirmative defenses."). We will review the applicability of parental discipline to this case in a later section.

{¶ 19} R.C. 2919.25(A), the statute for domestic abuse at issue in this case, provides that "no person shall knowingly cause or attempt to cause physical harm to a family or household member." "Physical harm" pursuant to R.C. 2901.01(C) is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 20} In *Westlake v. Y.O.*, this court found that the prosecution had proven their case with sufficient evidence where a father had slapped his son five times and the final slap caused his eye to swell and turn red. *Id.* at ¶ 19.

{¶ 21} In this case, the state presented evidence that Crenshaw hit her daughter with an extension cord three times, a kitchen spoon three times, and pushed her into a wall. She had bruises on her body and a larger, protruding bump on her forehead. This is clearly physical harm per R.C. 2919.25(A). Having found sufficient evidence, we turn now to manifest weight.

**Manifest Weight**

{¶ 22} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*,

78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13.

**{¶ 23}** In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder, and not a jury:

> Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41 citing *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.). *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

**{¶ 24}** A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387.

**{¶ 25}** Crenshaw argues that this is one such exceptional case and that her actions towards her daughter were reasonable and proper. We disagree.

**{¶ 26}** Proper and reasonable parental discipline can be an affirmative defense to a charge of domestic violence. *Y.O.*, 8th Dist. Cuyahoga No. 107226, 2019-Ohio-2432, ¶ 23, quoting *State v. Hart*, 110 Ohio App.3d 250, 673 N.E.2d 992 (3d Dist.1996). In *State v. Suchomski*, 58 Ohio St.3d 74, 567 N.E.2d 1304 (1991), the Ohio Supreme Court found that prosecution under R.C. 2919.25(A) for domestic

abuse does not interfere with a parent's right to administer corporal punishment. The court stated:

> Nothing in R.C. 2919.25(A) prevents a parent from properly disciplining his or her child. The only prohibition is that a parent may not cause "physical harm" as that term is defined in R.C. 2901.01(C). "Physical harm" is defined as "any injury[.]" "Injury" is defined in Black's Law Dictionary (6 Ed.1990) 785 as "* * * [t]he invasion of any legally protected interest of another." (Emphasis sic.) A child does not have any legally protected interest which is invaded by proper and reasonable parental discipline.

*Id.* at 75.

{¶ 27} The Supreme Court wrote recently that the definition supplied for physical harm and injury was "overly legalistic and technical," and had caused some confusion as to how to deploy parental discipline as an affirmative defense. *State v. Faggs*, Slip Opinion No. 2020-Ohio-523. While we are only tasked with deciphering "physical harm" as to these facts, we are cognizant that the Supreme Court has not offered a hard-and-fast rule; this requires a case-specific analysis.

{¶ 28} Pursuant to *Suchomski*, a parent may use corporal punishment as a method of discipline without violating R.C. 2919.25(A) as long as the discipline is proper and reasonable under the circumstances. *Y.O.* at ¶ 24 citing *State v. Hicks*, 88 Ohio App.3d 515, 518, 624 N.E.2d 332 (10th Dist.1993). "Proper" and "reasonable" have been respectively defined as "suitable or appropriate" and "not extreme or excessive." *Id.*

{¶ 29} In *Y.O.*, this court found that:

> [N]o testimony was presented that other noncorporal punishment attempts were exhausted or that prior instances of noncorporal

punishment proved ineffective. The fact that Y.O. slapped D.O. repeatedly without any opportunity for him to become obedient or respectful, is excessive. Accordingly, this is not the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice.

*Id.* at ¶ 30.

{¶ 30} In reaching that conclusion in *Y.O.*, this court looked to the factors set forth in *Hart*, 110 Ohio App.3d at 256, 673 N.E.2d 992. In particular, "[t]he propriety and reasonableness of corporal punishment in each case must be judged in light of the totality of the circumstances. A child's age, behavior, and response to noncorporal punishment as well as the location and severity of the punishment are factors that should be examined." *Id.*

{¶ 31} In this case, Crenshaw did not attempt any noncorporal methods of punishment and there was no evidence presented that noncorporal methods had not worked previously. Indeed, it seems that Crenshaw acted in anger rather than with an intent to discipline. Furthermore, we do not find that pushing a child into a wall is a disciplinary method. After considering the factors set forth in *Hart*, and considering our prior decision in *Y.O.,* we find that the discipline in this case was not proper and reasonable. *State v. Perez*, 8th Dist. Cuyahoga No. 108245, 2020-Ohio-100.

{¶ 32} Crenshaw argues that the trial court focused on whether D.T. had suffered "substantial harm" rather than whether discipline was appropriate. Whether that is true or not is irrelevant; we look only to the weight of the evidence to determine whether the trial court lost its way. We find that the court did not. This

is not one of those exceptional cases where the weight of the evidence urges reversal.

Accordingly, we sustain the conviction for domestic violence.

**Endangering Children: the Second and Third Assignments of Error**

Second Assignment of Error

> The Trial Court Erred in Denying Appellant's Crim.R. 29 Motion for Acquittal and for convicting her of F-3 Endangering Children (Counts 1&2) Because she did not Cause her Daughter Serious Physical Harm.

Third Assignment of Error

> The Trial Court Erred in Denying Appellant's Crim.R. 29 Motion for Acquittal and for Convicting her of F-3 Endangering Children (R.C. 2919.22)(A) Because that Section of the Endangering Children Statute Prohibits Neglect of Duty and there is no Evidence that Appellant did so.

{¶ 33} Crenshaw also challenges her convictions as to Counts 1 and 2 for endangering children and asks that we also review whether her Crim.R. 29 motion was properly denied. We find that there was not sufficient evidence to support her convictions on either count.

{¶ 34} Crenshaw was convicted of violating R.C. 2919.22(B)(1) and 2919.22(A) — for Counts 1 and 2, child endangering, respectively. The statute states:

> (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * * .

> (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

> (1) Abuse the child

**{¶ 35}** In order to uphold Crenshaw's conviction pursuant to R.C. 2919.22(A), we look to whether the state provided sufficient evidence as to whether Crenshaw created a "substantial risk to the health or safety of the child, by violating a duty of care protection or support."

**{¶ 36}** In order to uphold Crenshaw's conviction pursuant to R.C. 2919.22(B)(1), we look to whether the state provided sufficient evidence as to whether Crenshaw "abused D.T."

**{¶ 37}** For ease of analysis, we will discuss R.C. 2919.22(B)(1) first and determine whether Crenshaw "abused" D.T.

## 1) Serious physical harm

**{¶ 38}** We find that the state did not present sufficient evidence to prove that D.T. suffered serious physical harm and that her conviction as to Count 1 should be overturned.

**{¶ 39}** "Child abuse" is defined as "an act which inflicts serious physical harm or creates a substantial risk of serious harm to the physical health or safety of the child." *State v. Ivey*, 98 Ohio App.3d 249, 257, 648 N.E.2d 519 (8th Dist.1994).

**{¶ 40}** Serious physical harm is defined under R.C. 2901.01(E) as follows:

(E) 'Serious physical harm to persons' means any of the following:

(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(2) Any physical harm which carries a substantial risk of death;

(3) Any physical harm which involved some permanent incapacity, whether partial or total, or which involved some temporary, substantial incapacity;

(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;

(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain.

{¶ 41} At trial, the state argued that D.T. had suffered a "temporary, serious disfigurement" and some degree of "prolonged or intractable pain" as a result of Crenshaw's actions. However, even in the light most favorable to the prosecution, we do not find that there was sufficient evidence of serious physical harm under those terms.

{¶ 42} Here, D.T. was pushed into a wall and developed visible bruising as well as a bump on her head. She also was hit with an electrical cord and a kitchen spoon and sustained bruising from that. D.T. also testified that she could not sleep because of the pain. Crenshaw clearly lost control and struck D.T. out of anger. However, per our precedent, that does not rise to the level of serious physical harm.

{¶ 43} In *State v. Snyder,* 8th Dist. Cuyahoga No. 94755, 2011-Ohio-1062, we found that significant bruising on a two-year-old's body was not sufficient evidence of serious physical harm. In *Snyder*, the toddler was disciplined for a potty-training accident; her father hit her on the rear multiple times, enough to cause "excessive bruising." *Id.* at ¶ 19. The toddler was taken to the hospital but released without any treatment. While we referred to the father's actions in this case as "excessive punishment" it was clear that serious physical harm did not result from the incident. *Id.* at ¶ 20.

{¶ 44} In *Ivey,* this court found that visible welts, swollen hands, and cuts on the child's buttocks were not sufficient evidence of serious physical harm. *Ivey,* 98 Ohio App.3d 249, 257, 648 N.E.2d 519. The physical harm in *Ivey* was more severe than what we have in this case, yet this court did not find that the harm amounted to "serious physical harm."

{¶ 45} Our precedent does include cases where this court did find serious physical harm. In each instance, the harm was far more severe than what D.T. suffered.

{¶ 46} In *State v. Wright,* 8th Dist. Cuyahoga No. 92594, 2010-Ohio-243, the child was also hit with an electrical cord. However, in that case, the child had welts wrapped around her body from the abuse; months later she still had visible scarring. The state argues that *Wright* is controlling because the method of discipline was similar. But we look to the harm that occurred, and in *Wright,* the harm was much more severe. In *Wright,* the child had visible scars still present months after the incident. Here, D.T. had a bump on her head and some bruising. The hospital did not recommend a return visit for the injuries and there is no evidence offered by the state that scarring or lasting marks resulted.

{¶ 47} In *State v. Clark,* 8th Dist. Cuyahoga No. 96207, 2011-Ohio-6623, the state presented evidence that the four-year-old child had been hit with a belt. The beatings left cuts and bruises and a "conjunctival hemorrhage" — bleeding in her eye. The state also presented evidence of bite marks and bruising on her arms. Many of the bruises were in different stages of development indicating beatings over

a period of time. In that case we found evidence of serious physical harm, noting that these injuries caused prolonged, acute pain and that they were not the result of a single incident.

{¶ 48} The state also asks us to consider a case outside our district, *State v. Gray*, 6th Dist. Lucas No. L-04-1126, 2005-Ohio-3861. In *Gray,* the state presented evidence that two boys were hit with an extension cord. The Sixth District compared the case to *Ivey*, but stated that unlike *Ivey*, the harm was more severe in part because the boys were hit indiscriminately across their back, arms, shoulder, and faces. *Ivey*, 98 Ohio App.3d 249, 648 N.E.2d 519*.* One of the children still had scars six months after the incident.

{¶ 49} In *Gray* and *Clark* the state presented evidence of extreme discipline and obvious serious physical harm. In *Clark*, the discipline occurred over a prolonged period of time and included bleeding in the victim's eye. In *Clark* the state presented evidence of bite marks in addition to welts. In *Gray*, there was evidence of an indiscriminate beating and one victim had visible scars six months after the fact. In each case, the court was right to find serious physical harm. But the level of the harm in both cases is well beyond the harm in this case.

{¶ 50} Here, a child suffered bruising and a bump on her head. We do not seek to minimize the pain that D.T. suffered, but the fact remains that her injuries only amounted to bruising and a bump. She did complain of not being able to sleep as a result of the pain the night after the incident. However, a few days later, she only described the pain as a two out of ten. The doctor only administered Tylenol,

an over-the-counter pain medication. She did not require any follow-up care. D.T.'s father did not even give her any Tylenol in the days after the hospital visit. While this is certainly evidence of physical harm, the state did not present sufficient evidence of serious physical harm such that we can uphold a conviction under R.C. 2919.22(B)(1).

{¶ 51} As a result of our findings as to R.C. 2919.22(B)(1), we also find that the state did not present sufficient evidence to convict Crenshaw under R.C. 2919.22(A); Crenshaw did not violate a duty of care by not taking D.T. to the hospital.

## 2) R.C. 2919.22(A)

{¶ 52} The state argues that D.T. was in extreme pain and that she needed to go to the hospital two days after the incident. It follows, according to the state, that Crenshaw therefore ignored a substantial risk of injury. However, as we have already discussed, D.T. had not suffered serious physical harm that necessitated medical attention. The physician did not order any tests for head trauma because she did not believe any tests were necessary. As a result, there is no evidence of a substantial risk of injury.

{¶ 53} The state argues that our precedent in *State v. Jackson*, 8th Dist. Cuyahoga No. 82724, 2004-Ohio-2332, is controlling. We disagree. In *Jackson*, the child suffered damage to her eye and she ended up losing her vision as a result. The state presented evidence that there was discharge coming from the eye and that

Jackson ignored the visible harm to the child and did not bring her to the hospital. If Jackson had brought her to the hospital, her vision likely would have been saved.

{¶ 54} The state also asks us to consider *State v. Lloyd*, 8th Dist. Cuyahoga No. 78852, 2001 Ohio App. LEXIS 4906 (Nov. 1, 2001). In *Lloyd*, a five-year-old child was hit with a switch, choked, and held under water. The child was visibly struggling to breathe when choked and visibly struggling to reach the surface when being held under water. The father only stopped when the mother intervened. We found that this was evidence of a substantial risk of physical harm. But *Lloyd* is substantially different from our facts. In *Lloyd*, the father created a substantial risk of serious injury. While Crenshaw acted in anger and temporarily lost control, she stopped hitting D.T. Her actions did not come close to the substantial risk of physical harm inherent in Lloyd's actions.

{¶ 55} Here, the state attempts to argue that the bruising and the bump on D.T.'s head was evidence of a substantial risk of a serious head injury. Indeed, the E.R. doctor told D.T.'s father to bring her back to the hospital if she exhibited any signs of a head injury. However, the doctor did not perform a concussion test or order any other imaging test; she did not believe it was necessary to test for head trauma. On the whole, we agree with the state that there was evidence D.T. could have suffered a serious head injury. However, some risk of a serious head injury does not equate to substantial risk of a head injury. The state cannot meet its standard here.

{¶ 56} We turn now from the convictions to the more procedural aspects of this case.

**Competency of the child witness: the First Assignment of Error**

> The Trial Court Erred in Failing to Determine Whether—year [sic] old Child Witness Was Competent to Testify.

{¶ 57} In Crenshaw's first assignment of error she argues that the trial court erred in allowing nine-year-old D.T. to testify without first conducting a competency hearing.

{¶ 58} The standard of review for admissibility of evidence is abuse of discretion. *State v. Holland*, 8th Dist. Cuyahoga No. 91249, 2008-Ohio-3450, citing *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 587 N.E.2d 290 (1992). However, Crenshaw did not object during the trial; therefore we review for plain error. *See State v. Peagler*, 76 Ohio St.3d 496, 668 N.E.2d 489 (1996).

{¶ 59} When confronting plain error, we must tread softly. The Ohio Supreme Court has held that the "power afforded to notice plain error, whether on a court's own motion or at the request of counsel, is one which courts exercise only in exceptional circumstances, and exercise cautiously even then." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). We do not find these to be exceptional circumstances mandating reversal.

{¶ 60} Evid.R. 601(A) states, in pertinent part, that every witness is presumed competent except "children under ten years of age, who appear incapable

of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

{¶ 61} The Ohio Supreme Court held the following regarding the determination of a child witness' competency:

> It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's competency to testify. Such determination of competency is within the sound discretion of the trial judge. The trial judge has the opportunity to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully. Thus, the responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them.

*State v. Frazier*, 61 Ohio St.3d 247, 251-252, 574 N.E.2d 483 (1991).

{¶ 62} It is preferred for the trial court to conduct a competency hearing before allowing children under the age of ten to take the stand. However, other Ohio courts have previously found that it was not plain error for the trial court to fail to do so. *See, e.g., State v. Morgan*, 31 Ohio App.3d 152, 509 N.E.2d 428 (1st Dist. 1985). In addition, we have previously found no plain error in similar circumstances to these. *Warrensville Hts. v. Thomas*, 8th Dist. Cuyahoga No. 78613, 2001 Ohio App. LEXIS 3724 (Aug. 1, 2001).

{¶ 63} In *Thomas*, a nine-year-old witness testified without the trial court conducting a competency hearing. This court found that this was not plain error because:

> We note, initially, that the girl was over nine and one half years old. From her testimony, she appeared capable of receiving just

impressions of facts and events, accurately relating them. She also appeared to understand truth and falsity and to appreciate her responsibility to be truthful.

*Id.* at *6-7.

{¶ 64} We find *Thomas* to be instructive. Here the witness was 9 years old and, as in *Thomas*, her testimony illustrates that she was capable of accurately answering questions and remembering details. She also seemed cognizant of the difference between truth and falsity, and appreciated that she must be truthful.

{¶ 65} In response, Crenshaw references two cases that she argues fortify her position: *In re J.M.*, 8th Dist. Cuyahoga No. 85546, 2006-Ohio-1203, and *State v. Holland*, 8th Dist. Cuyahoga No. 91249, 2008-Ohio-3450. They are both easily distinguished.

{¶ 66} In *J.M.*, the Eighth District found that a trial court abused its discretion when, after conducting a limited competency hearing, the court declared an 11-year-old witness competent. The court had been apprised of potential cognitive issues with the witness and conducted voir dire to assess competency. The witness was clearly not competent to testify.

{¶ 67} The witness was unable to relay which month it was, which country she was in, or whether Cleveland was a city or country. This court found that "[a]fter the trial court questioned [the witness] regarding routine questions such as the day, month, and year and received inaccurate or confusing responses from her, the court merely proceeded to the next set of questions without delving further into the key issue of competency." *J.M.* at ¶ 22. This court found that process inadequate,

especially after reviewing the witness's testimony; she did not present as a 11-year-old with average intelligence. The Eighth District reversed and remanded as a result.

{¶ 68} In *Holland*, two five-year-old witnesses were allowed to testify without the trial court conducting a competency hearing; this court reversed. However, as in *J.M.*, it was not an automatic reversal. This court reviewed the testimony of both witnesses and found that there was significant evidence both witnesses were not competent to testify.

{¶ 69} While it is certainly true that the trial court should have conducted a competency hearing in this case, we do not find that it reached the level of plain error.

{¶ 70} As in *Thomas*, the witness presented as a child witness of average intelligence, able to recall significant details about both her life and the incident.

{¶ 71} Finally, this was a bench trial conducted by an experienced and capable trial court judge. We have consistently held that "in examining the record to determine this issue, we may give weight to the fact that the error occurred in a trial to the court, rather than a jury trial." *State v. Hendrix,* 8th Dist. Cuyahoga No. 63566, 1993 Ohio App. LEXIS 4133, 20 (Aug. 26, 1993).

{¶ 72} As a result, we find no plain error; this assignment of error is without merit.

**Domestic Violence:  Enhancing offenses — the Fifth Assignment of Error**

> The Trial Court Erred in Convicting Appellant of F-4 Domestic Violence Because the State Failed to Establish that her Prior Aggravated Assault Conviction was an Enhancing Offense.

{¶ 73} Crenshaw argues that the state did not submit any evidence that proves her aggravated assault conviction victimized a family member.  We agree.

{¶ 74} When a defendant is convicted pursuant to R.C. 2919.25(A), the conviction may be elevated from a first-degree misdemeanor to a fourth-degree felony if the defendant had previously been convicted pursuant to the following:

> Except as otherwise provided in division (D)(4) of this section, if the offender previously has pleaded guilty to or been convicted of domestic violence, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to domestic violence, a violation of section 2903.14, 2909.06, 2909.07, 2911.12, or 2919.22 of the Revised Code if the victim of the violation was a family or household member at the time of the violation, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to any of those sections if the victim of the violation was a family or household member at the time of the commission of the violation, *or any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense*, a violation of division (A) or (B) of this section is a felony of the fourth degree.

R.C. 2919.25(D)(3) (emphasis added).

{¶ 75} An aggravated assault against a family member would constitute an offense of violence.  In its brief, the state alleges that Crenshaw's aggravated assault was perpetrated against her then husband.  But there is nothing in this record to support that assertion.

{¶ 76} The state submitted two exhibits to the trial court: a journal entry reflecting a change of plea and a journal entry reflecting the sentence Crenshaw received for the aggravated assault. Tr. 23. Neither entry describes the identity of the victim.

{¶ 77} Crenshaw, according to the state, stipulated to the following:

> And I believe the stipulation is that these certified journal entries are authentic, admissible, and the defendant, India Crenshaw, represented in the journal entries is in fact the defendant, India Crenshaw, in court today.

*Id.*

{¶ 78} The court later confirmed that the parties were:

> [s]tipulating to the pleas and sentencings, those cases would be case number 620327, 630175, and the person referred to as India Crenshaw in those journal entries is the defendant.

Tr. 117.

{¶ 79} The court did not mention that the parties were stipulating to the identity of victim; the stipulation was merely to the identity of the defendant. That is not enough in this case.

{¶ 80} It is well settled that "[w]hen a prior conviction elevates a misdemeanor to a felony, 'the prior conviction is an essential element of the crime, and [it] must be proved by the state.'" *State v. Tate*, 138 Ohio St.3d 139, 2014-Ohio-44, 4 N.E.3d 1016, ¶ 17, quoting *State v. Allen*, 29 Ohio St.3d 53, 506 N.E.2d 199 (1987). An offender may, however, stipulate to a prior conviction in order to avoid having the evidence presented to a jury. *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 14, citing R.C. 2945.75(B)(1).

{¶ 81} In this case, Crenshaw stipulated that she was the defendant in the aggravated assault case. She did not stipulate as to who the victim was. We have held previously that if, for instance, a defendant had previously been convicted of domestic violence then their stipulation to being the defendant in a previous case is sufficient evidence to enhance an offense under this statute. *State v. Williams*, 8th Dist. Cuyahoga No. 84040, 2004-Ohio-6418. That logic does not extend to the present situation. The identity of the defendant was not the only fact at issue; the relationship to the victim was an essential element that must be proved. *See State v. Sanders*, 8th Dist. Cuyahoga No. 107253, 2019-Ohio-1524 ("The fact that defendant's prior conviction for attempted abduction involved a 'family or household member' was an 'additional element' under R.C. 2945.75 and, because the verdict form the jury signed did not state that such additional element was present, the verdict form supported only a conviction for a fourth-degree felony under R.C. 2945.75(A)(2).").

{¶ 82} Here, we cannot simply take the state's word in an appellate brief that Crenshaw perpetrated her aggravated assault against her family member. It may have been the intention of Crenshaw and her attorney to stipulate to that fact but we cannot rely on conjecture when it comes to proving an essential element of the crime.

{¶ 83} There is nothing in this record that indicates that the victim of the aggravated assault was a family member. Crenshaw did not stipulate to that fact. As a result, we cannot find that the enhancing offense was proven.

**Ineffective Assistance of Counsel: the Sixth Assignment of Error**

> Appellant was Denied her Right to Effective Assistance of Counsel due to the Cumulative Effect of Defense Counsel's Trial Errors.

{¶ 84} In her final assignment of error, Crenshaw argues that her counsel was ineffective as to the entirety of her defense and the cumulative effect of counsel's errors merits reversal. We disagree.

{¶ 85} Our review of counsel's performance is highly deferential. *State v. Korecky*, 8th Dist. Cuyahoga No. 108328, 2020-Ohio-797, ¶ 20, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because we presume licensed attorneys are competent, the party claiming ineffective assistance of counsel bears the burden of proving that counsel was ineffective. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985).

{¶ 86} "To gain reversal on a claim of ineffective assistance of counsel, a defendant must show that (1) his 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, ¶ 18, quoting *Strickland*. "The first prong of *Strickland's* test requires the defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Id.*, quoting *Strickland* at 688. "*Strickland's* second prong requires the defendant to show 'a reasonable probability that but for counsel's errors, the proceeding's result would have been different.'" *Id.*, quoting *State v. Winters*, 8th Dist. Cuyahoga No. 102871, 2016-Ohio-928, ¶ 25, citing *Strickland*. That is, the second prong requires a determination as to whether

the defense was prejudiced by counsel's ineffectiveness. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 140, citing *Strickland* at 687.

{¶ 87} "While '[t]he right to counsel is the right to the effective assistance of counsel,' 'trial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel.'" *Fisher* at ¶ 19, quoting *Strickland* at 686, citing *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

{¶ 88} Crenshaw argues that her counsel committed numerous errors in her defense and that cumulative errors merit reversal. Despite suggesting that counsel committed numerous errors, Crenshaw highlights only two. She first notes that counsel mentioned several times during his remarks to the court that Crenshaw's discipline of her child was excessive. *See, e.g.*, tr. 123. Counsel also stated that Crenshaw's actions perhaps exceeded a normal disciplinary approach.

{¶ 89} We do not find that these errors individually or taken together rise to the level of overcoming the assumption of attorney competence.

{¶ 90} As to the first alleged error, counsel appears to have been deploying a strategy to mitigate the severity of Crenshaw's actions while still maintaining credibility with the court. It strains reason to argue that Crenshaw hitting a nine-year-old with an extension cord and then pushing her into a wall are "normal" disciplinary activities. Trial counsel, even so, tried to argue that his client was on edge emotionally because they were memorializing the birthday of Crenshaw's deceased son. Tr. 121. Trial counsel attempted to argue that the harm done to D.T. was justified while still acknowledging the obvious, that harm was done.

{¶ 91} At trial, there are numerous instances where counsel cited caselaw that suggested what Crenshaw had done did not rise to the level of substantial harm. Counsel clearly made a strategic decision to focus his efforts on the more serious criminal charges Crenshaw was facing.

{¶ 92} Crenshaw does not cite to any cases that suggest that this tactic rises to the level of ineffective assistance, and we do not find that the actions in this case rise to that level.

{¶ 93} Crenshaw also argues that counsel failed to raise with the court that the state had not proven the essential elements of Crenshaw's enhancing offense pursuant to R.C. 2919.25(D)(3). This was an unusual situation; we do not find that trial counsel erred.

{¶ 94} Failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance. *State v. Fears*, 86 Ohio St.3d 329, 715 N.E.2d 136 (1999). Here, the burden was on the state to offer proper exhibits that would have proven an enhancing offense. However, even if we did find that trial counsel erred in this instance, it would not have prejudiced Crenshaw as to the entire trial.

{¶ 95} Throughout the trial, counsel was competent and deployed a cognizable strategy to defend his client. Both the state and defense seemed to believe that the stipulation was sufficient. Any prejudice was limited to this isolated instance.

**Conclusion**

{¶ 96} In summation, we find that there was insufficient evidence as to Crenshaw's convictions for violation of R.C. 2919.22(A) and (B)(1). We discharge Crenshaw as to these convictions.

{¶ 97} We uphold Crenshaw's conviction for domestic violence pursuant to R.C. 2919.25(A). However, we do not find that the state provided sufficient evidence to prove that her conviction should be enhanced pursuant to R.C. 2919.25(D)(3). We reverse the decision of the trial court as to this finding and remand for resentencing consistent with a first-degree misdemeanor pursuant to R.C. 2919.25(A).

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

PATRICIA ANN BLACKMON, P.J., and
LARRY A. JONES, SR., J., CONCUR