[Cite as *State v. Lee*, 2024-Ohio-2044.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 2023AP070041 |
| | : | |
| GARY A. LEE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Tuscarawas County
                                 Court of Common Pleas, Case No.
                                 2022CR70252



JUDGMENT:                        AFFIRMED



DATE OF JUDGMENT ENTRY:          May 28, 2024



APPEARANCES:


For Plaintiff-Appellee:                For Defendant-Appellant:

RYAN STYER                             RICHARD DRAKE
TUSCARAWAS CO. PROSECUTOR              D. COLEMAN BOND
KRISTINE W. BEARD                      116 Cleveland Ave. NW, Ste. 303
125 E. High Ave.                       Canton, OH 44702
New Philadelphia, OH 44663

*Delaney, P.J.*

{¶1} Appellant Gary A. Lee appeals from the June 23, 2023 Judgment Entry on Sentencing of the Tuscarawas County Court of Common Pleas. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

*Facts adduced from record of appellant's jury trial*

{¶2} Jane Doe is an adult with significant disabilities requiring round-the-clock caretaking. Appellant is the sometimes-paramour of Jane Doe's Mother. During the course of the instant case, Jane was found to be incompetent by the Tuscarawas County Probate Court and was placed under the guardianship of Grandfather and Grandmother.

{¶3} Grandfather described Jane's disabilities at trial. Jane's father died and Mother was her caretaker until this investigation. Jane was struck in the head by a truck when she was 22 months old. She can't walk, is blind in one eye, has no control over the left side of her body, has no teeth, and is balding due to complications from lupus. She uses an electric wheelchair. Jane needs constant care every day from the moment she wakes up until she goes to bed; her daily care includes helping with bathroom needs, preparing meals, putting her clothes on, and getting her in and out of bed. Jane cannot handle her own affairs. Despite these issues, Grandfather described Jane as a happy person who never met a stranger. She loves SpongeBob and watches the cartoon every day.

{¶4} Jane Doe has received services from the Tuscarawas County Board of Developmental Disabilities since 2008. Pursuant to an expert evaluation, Jane Doe was identified as an incompetent person.

{¶5}  The instant case arose when Mother approached a Coworker at work, very upset, and showed Coworker a photo of a man touching Jane's breasts.  Mother identified the man in the photo as appellant.  Coworker was shaken and told Mother she needed to make a police report immediately, or else Coworker would. Coworker could not sleep that night because she was convinced something was deeply wrong. Mother failed to report the matter to police, so Coworker went to the Tuscarawas County Sheriff's Department the next day and Detective Adam Fisher launched an investigation.

{¶6}  Fisher spoke to Coworker about her conversation with Mother. In Fisher's opinion, Coworker was appalled by what she observed and told Fisher she was shown a photo of appellant touching Jane Doe's breasts. When Mother learned Coworker reported the photo, she was angry with Coworker.

{¶7} Fisher went to Mother's house and knocked on the door, but no one answered. He left his business card asking Mother to contact him, but she never did. Two days later, Mother happened to be at the Tuscarawas County Jail with Jane, visiting Mother's son who was incarcerated on an unrelated matter. Fisher approached and asked if Mother was willing to speak to him; she agreed to do so outside the presence of Jane Doe.

{¶8} Fisher spoke with Mother and she confirmed she showed the photo to Coworker. Fisher learned the photo was taken when Mother, appellant, and Jane Doe were at a Hampton Inn in New Philadelphia. Mother gave Fisher permission to search her phone but he found nothing of evidentiary value. Fisher testified Mother was not surprised when he could not find the photo on her phone.

{¶9} Fisher also spoke to Jane Doe alone. Jane said she was left alone in a room at the Hampton Inn with appellant, and he pulled up her shirt and touched her breasts. Jane told appellant she didn't like it but he continued anyway.

{¶10} On March 22, 2022, Fisher executed a search warrant at appellant's residence, specifically looking for digital devices and evidence. Appellant opened the door to law enforcement and was escorted from the residence. Fisher explained why law enforcement was present and testified appellant did not seem surprised, stating "I have some idea why you're here. [Mother] filled me in."

{¶11} Officers seized digital devices including at least one cell phone and a video camera. The items were submitted them to B.C.I., but nothing of evidentiary value was found. There was evidence that one device contained encrypted material that B.C.I. could not access. Fisher testified there was a digital footprint from appellant's phone leading to a cloud-based encrypted service that B.C.I. could not access, but acknowledged appellant was not the creator of the encrypted service and anyone could pay for an encrypted storage service.

{¶12} Fisher testified no alleged photo of appellant touching Jane's breasts was found on Mother's phone or appellant's phone.

{¶13} Jane Doe testified at trial and identified appellant as a "nice guy." Jane at first testified appellant has never done anything that is "not nice" and denied that he touched her breasts. When the prosecutor asked Jane about touching, she said she was scared and questioning temporarily ceased until a victim advocate sat with Jane as she testified. Referring to appellant, Jane testified he touched her; she pointed to her breasts, and said she told him "don't."

{¶14} On cross-examination, Jane testified she loves appellant and he loves her, and again denied he touched her breasts. On redirect, however, Jane said she was telling the truth when she said appellant did touch her breasts.

{¶15} Fisher interviewed appellant and appellee played a recording of the interview at trial. Appellant admitted he was at the Hampton Inn with Mother and Jane. He said Mother would bring Jane to his house and would encourage him to touch her breasts. Appellant said Jane was his girlfriend and was capable of consenting to sexual contact. Fisher testified appellant told him about the incident at the Hampton Inn but claimed he was putting an ointment on Jane's back and breasts. Appellant did not tell Fisher he received sexual gratification from the act, and Fisher didn't discuss with Coworker whether there was evidence of sexual gratification in the photo she saw.

{¶16} Appellant testified on his own behalf at trial. He said he dated Mother on and off for six years, and was sometimes Jane Doe's caretaker because he was retired while Mother still worked. Appellant testified he helps Jane use the bathroom, change clothes, get in and out of bed, and anything else she needs.

{¶17} When questioned about the incident at the Hampton Inn, appellant said Mother brought Jane Doe to the hotel to swim and use the hot tub; she and appellant intended to film a sex video in the hotel room after Mother returned Jane to Grandparents. Appellant admitted he was alone with Jane Doe in the room, setting up the camera, and touched her breasts, but claimed he applied an ointment to her breasts because she had a rash. Appellant stated he sent Mother a screen shot of Jane Doe from that day. Appellant testified he thought to himself afterward, "That's probably not good." He claimed the photo was a screenshot from a video in which he was walking up behind Jane

to give her a hug, and it only looked like his hands were on her breasts.  He only sent the screenshot to Mother because he didn't recognize it and asked Mother where it was from.

{¶18}  Appellant further testified that  Mother told him about the investigation several days before Fisher arrived at his residence with the search warrant. Appellant admitted he used that time to erase videos because "[he] didn't want to risk getting in trouble, [he] deleted it."

*Instances of alleged prosecutorial misconduct during trial*

{¶19} During cross examination of appellant, he denied that he admitted to Detective Fisher that he molested a handicapped person.  The prosecutor responded, "It sure seems like you did," and the trial court admonished the prosecutor.  T. 240-241.

{¶20} During appellee's closing argument, the following statements were made:

> * * * *.
>
> [PROSECUTOR]: * * * *. You have to judge the credibility of the witnesses. Who was credible?  Was [appellant] credible?  His story has changed from the minute Detective Shaffer, Fisher, talked to him to today.  It has not remained consistent.  And when push comes to shove, whose story has remained consistent.  It's an awful thing to drag a kid or a disabled adult into a courtroom and talk about such a thing. It is a heartbreaking thing. But under our law the Defendant has the right to confrontation. Because everybody says [prosecutor] why don't you put them in another room, why don't you do this, why don't you do that--
>
> [DEFENSE COUNSEL]:  Your Honor.

[PROSECUTOR]: --because it is not possible.

[DEFENSE COUNSEL]: --I'm going to object to this portion. This is, she, she's basically saying that he's dragged her into court because he's exercising his right to a trial. That it's horrible that he's dragged--

[PROSECUTOR]: I don't--

[DEFENSE COUNSEL]: That's improper.

THE COURT: Let's, let's have a sidebar.

(Whereupon, sidebar was held as follows:)

THE COURT: I, I heard something about why didn't she do this in another room. I guess I--

[PROSECUTOR]: Oh no, no, no, no. I'm just trying—

THE COURT: --I lost track of, I lost track of what, just remind me what prompted your objection.

[DEFENSE COUNSEL]: It's a horrible thing to have a child or handi—mentally handicapped person brought into court and have to subject them to this. And then talk about how [appellant] has, you know, or you know, talking about how [appellant's] exercised his right to a jury trial. I mean—

THE COURT: Because I heard something about a, a separate room. I was writing and I heard something about a separate room and that he has the right to confrontation. So why were we talking about a separate room?

[PROSECUTOR]: Oh no, I just said because people will ask me why didn't you put them in a separate room, why didn't you do this, why didn't you do that to make it easier.

THE COURT:  A separate room for what?

[PROSECUTOR]:  Testimony.

THE COURT:  Well we don't do that.

[PROSECUTOR]:  Well you can do that and people ask me that all the time. I'm just simply saying she's in this courtroom because he has a right to confrontation.  That's just the law.

[DEFENSE COUNSEL]:  But the way she started off the whole sentence You Honor, the implication is it's horrible that you have to have this person--

[PROSECUTOR]:  It is awful.

[DEFENSE COUNSEL]:  --in here and it's because of him exercising his right to a, a jury trial.

[PROSECUTOR]:  I didn't--

[DEFENSE COUNSEL]:  Oh no, no, no, no.

THE COURT:  Okay.

[DEFENSE COUNSEL]:  Your Honor I move for a mistrial.

THE COURT:  Okay.

[PROSECUTOR]:  Well that's not what I said first of all.  That's not what I said at all.

[DEFENSE COUNSEL]: It was entirely improper, [prosecutor].

[PROSECUTOR]: No, I can talk about why--

[DEFENSE COUNSEL]: You know.

[PROSECUTOR]: --a victim—

THE COURT: Do you want to address the motion for a mistrial or argue with him?

[PROSECUTOR]: I'll address the motion for the mistrial.

THE COURT: Okay.

[PROSECUTOR]: I don't think I have done anything inappropriate. I think it's the law that, that they hear about that he has the right to confrontation and that's why we bring people in to testify, because of, because of the right of confrontation. I don't think there's anything un, anything unethical or anything mistrial appropriate about that.

[DEFENSE COUNSEL]: And Your Honor, again, I believe that it was the opening comment about how horrible it is to have to have to bring somebody in, a child or, or a mentally handicapped person, to have to have them come into court to testify, but it's [appellant's] right. That, no--

[PROSECUTOR]: I never said those words.

[DEFENSE COUNSEL]: No.

[PROSECUTOR]: I never said it's [appellant's] right.

THE COURT:  Well, he's saying it's [appellant's] right to have the trial.

[DEFENSE COUNSEL]:  Yeah.

[PROSECUTOR]:  I never said that.

THE COURT:  I am denying the motion for a mistrial, but I'll offer some comments to the jury and hopefully we can go from there.

(Whereupon, sidebar was concluded.)

THE COURT: Okay. Ladies and gentlemen, every trial that we have involving a criminal matter, there are people who are in one way or another affected by the event and it's never easy for anyone to have to come in and testify, but the accused always has the right to a trial by jury and so you will be getting some instructions from me shortly on the issue of sympathy and you will learn that sympathy for someone involved in a case is not going to be part of your decision making.  And so I would just reiterate that [appellant] has the right to a trial by jury and he's exercised that right, and we'll move on.

* * * *.

T. 254-258.

*Indictment, trial, conviction, and sentence*

{¶21} Appellant was charged by indictment with one count of gross sexual imposition pursuant to R.C. 2907.05(A)(5), a felony of the fourth degree [Count I] and one count of pandering sexually-oriented matter involving an impaired person pursuant to R.C. 2907.322(A)(1), a felony of the third degree [Count II].  Appellant entered pleas of

not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and the trial court overruled the motion. Appellant was found guilty as charged and sentenced to an aggregate prison term of 24 months.

{¶22} Appellant now appeals from the trial court's Judgment Entry of conviction and sentence dated June 23, 2023.

{¶23} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶24} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED."

{¶25} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

{¶26} "III. THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."

**ANALYSIS**

I., II.

{¶27} Appellant's first and second assignments of error are related and will be considered together. He asserts his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶28} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review

for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶29} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶30} Appellant was found guilty of one count of gross sexual imposition ("G.S.I.") pursuant to R.C. 2907.05(A)(5), which states:

> No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
>
> * * * *.

The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

{¶31} "Sexual contact" is defined by R.C. 2907.01(B) as any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

{¶32} Appellant was also found guilty upon one count of pandering sexually-oriented matter involving an impaired person ("pandering") pursuant to R.C. 2907.322(A)(1), which states, "No person, with knowledge of the character of the material or performance involved, shall [c]reate, record, photograph, film, develop, reproduce, or publish any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality."

{¶33} R.C. 2907.01(C) defines "sexual activity" as sexual conduct or sexual contact, or both. The sexual activity alleged in the instant case was sexual contact.

{¶34} First, appellant argues his convictions are supported by insufficient evidence because both offenses arise from an alleged photo of appellant touching Jane Doe's breasts, and appellee never introduced any such photo at trial. Moreover, appellant

argues, there is no evidence any such touching occurred for the purpose of either person's sexual gratification.

{¶35} We find appellee presented sufficient evidence that the touching occurred and a photo was taken in the form of the witnesses' testimony. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Jane testified appellant touched her breasts and she told him, "Don't." Appellant admitted to Detective Fisher that he took a photo at the Hampton Inn, a screenshot presumably from the video camera he and Mother admittedly were going to make a sex tape with. Appellant claimed the photo did not depict sexual activity with Jane Doe and that it only "looked like" his hands were on Jane's breasts. T. 224. Appellant seemed to acknowledge that the photo showed otherwise, though, because he testified that after he sent the screenshot, he thought to himself, "that's probably not good." Appellant further admitted to Fisher that when he learned of the investigation, he deleted evidence because he didn't want to get in trouble.

{¶36} Beyond appellant's own words, the jury could have reasonably chosen to believe the testimony of Coworker, who was so disturbed by the photo she saw that she couldn't sleep that night and personally contacted law enforcement the next day. Coworker also testified that Mother was upset when she showed her the photo, thus evidence exists that Mother and Coworker looked at a photo and understood the photo to depict sexual activity between appellant and Jane Doe.

{¶37} Contrary to appellant's assertions, this evidence is sufficient to allow the jury to find that appellant engaged in "sexual contact" with Jane Doe when he fondled her

breasts. These body parts qualify as "erogenous zones" for purposes of R.C. 2907.01(B). Additionally, the manner of appellant's contact with Jane was sufficient to allow the court to infer that his touching of Jane was undertaken for the purpose of sexual gratification. *State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 21, citing *In re Anderson,* 116 Ohio App.3d 441, 441, 688 N.E.2d 545 (12th Dist.1996). The *Tate* Court explains how the factfinder may infer the element of sexual gratification from the circumstances and nature of the contact:

> The Ohio Revised Code does not define "sexual arousal" or "sexual gratification." *In re Anderson,* 116 Ohio App.3d 441, 443, 688 N.E.2d 545 (12th Dist.1996). However, R.C. 2907.01(B) "contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." *State v. Astley,* 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987). *See also Anderson* at 443.

> In determining whether sexual contact occurred, "the proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01." *State v. Cobb,* 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991). "While the purpose of sexual arousal or gratification is an essential element of the offense of gross sexual imposition, there is no requirement that there be direct

testimony regarding sexual arousal or gratification." *State v. Meredith,* 12th Dist. No. CA2004–06–062, 2005–Ohio–2664.

Whether the touching or contact was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature and circumstances of the contact. *Meredith,* citing *Anderson* at 443–444, and *State v. Mundy,* 99 Ohio App.3d 275, 289, 650 N.E.2d 502 (2d Dist.1994). In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making physical contact with the victim. *Meredith,* citing *Mundy* and *Cobb.* "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Cobb* at 185.

*State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 18-20.

{¶38} In the instant case, the jury could reasonably conclude that a photo depicting sexual activity was taken by appellant, sent to Mother, shown to Coworker, and deleted by appellant. The jury could reasonably infer from the nature of the contact that appellant committed the act of molestation for the purpose of sexual gratification.

{¶39} Next, appellant argues his convictions are against the manifest weight of the evidence because of the omission of the photo and any evidence of sexual gratification, and also because appellee appealed to the sympathy of the jury when the

prosecutor made inappropriate comments during appellant's cross-examination and in closing argument. We note the trial court specifically instructed the jury that sympathy for any party or witness could not be part of their deliberations. The jury is presumed to follow the instructions of the trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Appellant has not pointed to any evidence in the record that the jury failed to do so in this case. We have reviewed the prosecutor's comments in our discussion of appellant's third assignment of error, infra, and cannot find that the comments swayed the jury's verdicts.

{¶40} Appellant points to a number of inconsistencies in Jane's testimony as to whether the touching occurred. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, 2003 WL 21291042, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶41} Here, the jury heard the witnesses and viewed the evidence. In addition, the jury heard the arguments and appellant's own explanations of his actions. Thus, a rational basis exists in the record for the jury's decision.

{¶42} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), internal citation omitted. Appellant's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence and was convinced of appellant's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting appellant of the offenses.

{¶43} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of both G.S.I. and pandering.

{¶44} Appellant's first and second assignments of error are overruled.

III.

{¶45} In his third assignment of error, appellant argues his conviction must be reversed due to prosecutorial misconduct.  We disagree.

{¶46} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *Sunbury v. Sullivan*, 5th Dist. Delaware No. 11CAC030025, 2012-Ohio-3699, ¶ 30, citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

{¶47} In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. *State v. Treesh*, 90 Ohio St.3d 460, 464, 2001-Ohio-4, 739 N.E.2d 749.

{¶48} Allegations of prosecutorial misconduct implicate due process concerns, and the touchstone of the analysis is the "'fairness of the trial, not the culpability of the prosecutor.'" *State v. Newton*, 108 Ohio St.3d 13, 2006-Ohio-81, 840 N.E.2d 593, ¶ 92, *quoting Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶49} If any misconduct occurred, the court must consider the effect it had on the jury "in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). With regard to each allegation of misconduct, we must determine whether the conduct was "improper, and, if so, whether [it] prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist. 2011), *citing State v. Williams*, 38 Ohio St.3d 346, 349–350, 528 N.E.2d 910 (1988).

{¶50} Whether statements made by a prosecutor amount to misconduct and whether such statements render a trial fundamentally unfair are mixed questions of law

and fact, which we review *de novo. State v. Razey*, 5th Dist. Delaware No. 23CAC030021, 2023-Ohio-4190, ¶ 28, citing *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009).

{¶51} Our inquiry is guided by four factors: (1) the nature of the remarks; (2) whether an objection was made by counsel; (3) whether corrective instructions were given by the court; and (4) the strength of the evidence against the defendant. *Razey,* supra, at ¶ 29, citing *Sidney v. Walters,* 118 Ohio App.3d 825, 829, 694 N.E.2d 132 (3d Dist.1997).

{¶52} In the instant case, appellant first points to the prosecutor's retort to appellant's denial of molesting a handicapped person: "It sure seems like you did." T. 240. The trial court immediately admonished the prosecutor. While we agree the remark was unnecessary, in the context of the entire trial we cannot say that it affected the outcome such that appellant would not otherwise have been found guilty.

{¶53} Appellant next points to the prosecutor's comments in closing argument in which she urged the jury to sympathize with Jane Doe because appellant effectually dragged her into court to testify by means of exercising his right to a jury trial. Again, we find the cited comments to be improper, and we are not persuaded by the prosecutor's argument at trial that she was not commenting on appellant's right to a jury trial. Nevertheless, upon review of the record as a whole we cannot find the comment affected the outcome of the trial. As discussed supra, the record was replete with evidence, including appellant's own testimony, of his disturbing episode with Jane Doe at the Hampton Inn.

{¶54} Further, defense trial counsel immediately objected and following the sidebar, the trial court instructed the jury they could not be swayed by sympathy for any individual. Appellant points to no evidence in the record that the jury failed to follow the

trial court's instruction.  A presumption always exists that the jury followed the trial court's instructions. *State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082 (1994); *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), at paragraph four of the syllabus, *rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163.

{¶55} Finally, based on our review of the entire case, we do not find that the prosecutor's comments were outcome-determinative or denied appellant a fair trial. We cannot conclude, based on all of the evidence produced at trial, that there was a reasonable probability that, but for the prosecutor's comments, appellant would have been acquitted.

## CONCLUSION

{¶56} Appellant's three assignments of error are overruled and the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Hoffman, J. and

Wise, J., concur.