[Cite as *State v. Tate*, 2013-Ohio-370.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No. 98221

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALPHONSO TATE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-544177

**BEFORE:** E.A. Gallagher, J., Keough, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** February 7, 2013

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Fallon Radigan
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Alphonso Tate appeals from his conviction received in the Cuyahoga County Court of Common Pleas. Tate argues that the state failed to support his convictions for gross sexual imposition with sufficient evidence and that the jury lost its way in finding him guilty. Finding no merit to the instant appeal, we affirm the judgment of conviction.

{¶2} On October 22, 2010, C.G., born July 11, 2000, was home alone due to a school suspension. C.G. lived with his mother, R.M., and his siblings. At that time, R.M. had a relationship with Tate, who would often stay with the family.[1] In 2010, R.M. worked as a nursing assistant at two different facilities while also attending Brown Mackie College in Akron for her nursing degree. R.M. testified that because of her busy schedule, Tate would often help with caring for and disciplining her children, including C.G.

{¶3} C.G. testified that on October 22, 2010, Tate picked him up from his residence and returned him to Tate's home, where his mother was sleeping. C.G. stated that R.M. woke up and before leaving for work, instructed Tate to return C.G. to his home. C.G. testified that Tate did not bring him home that night, instead, the two ate Chinese food and watched movies in Tate's bedroom until they fell asleep. C.G.

---

[1]The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.

testified that Tate's home only had furniture in one room so he and Tate slept in the same bed.

{¶4} C.G. stated that during the night, Tate woke him up by rubbing his shoulders. Tate asked C.G. to let him see something and then put his hands down C.G.'s pants. C.G. testified that he tried to move Tate's hands away, but that Tate continued to grab and squeeze his penis. Tate did eventually remove his hands but then told C.G. to put his hands down Tate's pants. When C.G. did not comply, Tate pulled C.G.'s hands into Tate's pants. C.G. testified that Tate instructed him to squeeze and play with his penis. C.G. described that "some stuff came out * * * it was slimy." Once this happened, C.G. went to the bathroom to wash his hands and returned to the bedroom. Tate again told C.G. to put his hands down Tate's pants, instructing him to squeeze, twist and play with Tate's penis. C.G. stated that this occurred until more "slimy stuff" came out of Tate's penis. C.G. went to the bathroom a second time to wash his hands and, again, returned to the bed where Tate lie.

{¶5} C.G. testified that he fell asleep after this second incident, but that Tate woke him up again by sticking his finger down the backside of C.G.'s "butt." C.G. stated that Tate never inserted his finger inside C.G. but that Tate told him "don't tell nobody." C.G. testified that he fell back asleep and woke up when his mother returned to Tate's home.

{¶6} R.M. testified that when she saw C.G. at Tate's home, she was angry because that meant that he would miss another day of school. R.M. stated that she, C.G.

and Tate drove to Brown Mackie College in Akron because she had to finish an assignment that was due that same day. R.M. stated that C.G. and Tate waited in the car while she worked on the assignment in the library. Once R.M.'s paper was done, the three drove back to Cleveland. When they arrived in Cleveland, Tate asked R.M. to drop him off at a friend's house and wait while he visited. Tate exited the vehicle, leaving C.G. and R.M. alone.

{¶7} After several minutes of questioning by R.M., C.G. told R.M. that Tate touched him and that he never wanted to go to Tate's home again. R.M. testified that she did not call the police or take her son for a medical evaluation until one week later. R.M. stated that she delayed the police and medical involvement because she was overwhelmed with the whole situation and her life.

{¶8} C.G.'s behavior began to decline in March 2011 when he began cutting himself with scissors and drew pictures that demonstrated that he was going to kill himself. C.G.'s behavior escalated to the point that C.G. was admitted to Fairview Hospital. While at the hospital, C.G. spoke with Registered Nurse Kathy Goellnitz. Goellnitz testified that C.G. complained of suicidal thoughts and gave a history of the sexual assault that occurred in October 2010. Specifically, C.G. told Nurse Goellnitz that Tate "touched my private parts * * * he made me rub his private parts and put his finger in my butt." Nurse Goellnitz performed a sexual assault examination but the delay of five months contributed to the lack of any evidence of a sexual assault.

{¶9} The Cuyahoga County Grand Jury indicted Tate with one count of

kidnapping, one count of rape and five counts of gross sexual imposition; to each were attached sexual motivation and sexually violent predator specifications. Tate elected to try all specifications to the court with the remainder of the charges being tried to a jury. A jury found Tate not guilty of the charges of kidnapping, rape and one count of gross sexual imposition and guilty of gross sexual imposition as charged in Counts 3, 4 and 5. The trial court granted Tate's motion for acquittal pursuant to Crim.R. 29 on Count 7 and found Tate not guilty on the attached specifications. The trial court imposed a prison term of 48 months on each count of gross sexual imposition to be served concurrently with one another.

{¶10} Tate appeals, raising the following assignments of error.

Assignment of Error I

The convictions for gross sexual imposition were against the manifest weight of the evidence.

Assignment of Error II

The convictions for gross sexual imposition were not supported by sufficient evidence and the trial court erred when it overruled Appellant's Motion for Criminal Rule 29 acquittal.

{¶11} Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.

{¶12} The standard of review with regard to the sufficiency of the evidence is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), as follows:

Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

{¶13} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, in which the Ohio Supreme Court held:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citation omitted.)

{¶14} In evaluating a challenge based on manifest weight of the evidence, a court sits as the 13th juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
>
> * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and

determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. (Citations omitted.) *Id*. at 387, 547.

{¶15} This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." (Citation omitted.) *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995.

{¶16} In the present case, the jury found Tate guilty of three counts of gross sexual imposition, which, pursuant to R.C. 2907.05(A)(4), provides as follows:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶17} "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is

a female, a breast, for the purpose of sexually arousing or gratifying either person.  R.C. 2907.01(B).

{¶18} The Ohio Revised Code does not define "sexual arousal" or "sexual gratification."  *In re Anderson*, 116 Ohio App.3d 441, 443, 688 N.E.2d 545 (12th Dist.1996).  However, R.C. 2907.01(B) "contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." *State v. Astley*, 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987).  *See also Anderson* at 443.

{¶19} In determining whether sexual contact occurred, "the proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01."  *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991).  "While the purpose of sexual arousal or gratification is an essential element of the offense of gross sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification."  *State v. Meredith*, 12th Dist. No. CA2004-06-062, 2005-Ohio-2664.

{¶20} Whether the touching or contact was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature and circumstances of the contact.  *Meredith,* citing *Anderson* at 443-444, and *State v. Mundy*, 99 Ohio App.3d 275, 289, 650 N.E.2d 502 (2d Dist.1994).  In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in

making physical contact with the victim. *Meredith,* citing *Mundy* and *Cobb.* "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Cobb* at 185.

{¶21} To prove its case, the state presented the testimony of C.G., who was 11 years old at the time of Tate's trial. C.G. testified that in 2010, Tate put his hand down C.G.'s pants and touched his penis. C.G. also stated that Tate made him touch and squeeze Tate's penis to the point where "slimy stuff" came out on two occasions. C.G. testified that this incident took place in Tate's bedroom, on Tate's bed, inside Tate's home.

{¶22} The state also presented the testimony of R.M. and Nurse Goellnitz, both of whom corroborated C.G.'s testimony.

{¶23} Contrary to what Tate claims, this evidence is sufficient to allow the trial court to find that Tate engaged in "sexual contact" on three occasions with C.G. when he touched C.G.'s penis and when he made C.G. touch his penis. These body parts qualify as "erogenous zones" for purposes of R.C. 2907.01(B). Additionally, the manner of Tate's contact with C.G. was sufficient to allow the court to infer that Tate's touching of C.G. was undertaken for the purpose of sexual gratification. *In re Anderson* at 441. Therefore, there was sufficient evidence to permit the trial court to find that Tate's acts amounted to gross sexual imposition.

{¶24} Furthermore, we do not find that the jury lost its way in convicting Tate of

the three charges of gross sexual imposition. Tate argues that the five-month delay between the incident and C.G.'s medical examination coupled with the lack of physical evidence of the crimes prove that the jury lost its way. We disagree. The state supported its case with the testimonial evidence of C.G., who clearly stated that Tate touched his penis and made him touch Tate's penis. The fact that no physical evidence documenting this touching was presented to the jury does not mean that no sexual contact took place. Additionally, the jury was in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the state, that the state has proven the offenses beyond a reasonable doubt. Accordingly, we cannot state that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶25} Tate's first and second assignments of error are overruled.

{¶26} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
TIM McCORMACK, J., CONCUR