[Cite as *In re K.A.H.*, 2025-Ohio-2364.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE K.A.H.                                            :

A Minor Child                                          :

                                                                    No. 114354
[Appeal by K.A.H.]                              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 3, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-23-109983

---

### *Appearances:*

Wegman Hessler Valore and Michael Gordillo, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nicholas P. Fink, Assistant Prosecuting Attorney, *for appellee*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} K.A.H. (the "Child") appeals the juvenile court's determination adjudicating her delinquent of two counts of sexual imposition. We affirm.

# I. Procedural History

{¶ 2} A three-count complaint was filed in the juvenile division of the common pleas court against the Child, a 13-year-old, alleging conduct that if committed by an adult would constitute gross sexual imposition in violation of R.C. 2907.05(A)(1).

{¶ 3} After a trial on February 21, 2024, a magistrate found the Child delinquent as to the first two counts of the lesser included offense of sexual imposition, R.C. 2907.06(A)(1). The magistrate found that the Child was not delinquent as to the third count. The matter was continued for a dispositional hearing pending the Child's completion of various assessments. On July 1, 2024, the magistrate placed the Child under community control.

{¶ 4} On August 20, 2024, the juvenile court approved and adopted the magistrate's decision. The matter was timely appealed, but this court remanded the matter to the juvenile court to cure a jurisdictional impediment, resulting in a corrected final judgment entry issued on March 13, 2025.

# II. Facts Adduced at Trial

{¶ 5} At trial, the State called the teacher victim and the dean of students to testify, and the parties stipulated to surveillance footage of the incident. The Child testified in her own defense.

{¶ 6} The charges stemmed from an incident occurring on March 6, 2023. The Child was in the hallway of her middle school at dismissal, approximately 2:45

p.m.; the victim left her classroom to find a student who had left their cellphone behind. The victim testified as to the events as follows:

> So they were horse playing in the hallway. I just said stop. When I said stop, the two students looked up. And that's when I was hit across the back, small of my back by [the Child] And then she goes, hi, Miss Grace. I stopped. I said, hold on, don't touch me. I said, my name is not Miss Grace. My name is Ms. [Victim] and I need you to proceed to go home.
>
> So as I went to step around her, she cut me off, stepped in front of me. She said, actually, your name is Miss LaTonya or Tony. I said no, my name is Ms. [Victim]. You will respectfully call me that. And I need you to move so I could go and you need to go home. Before I knew it, both her arms were embraced around my back. She put her hands – locked me like a bear hug, lower of my back, she pulled me to her. I'm trying to push back. I said, let me go, get off me. She did not.
>
> Then she proceeds to start gyrating on my left leg while I'm still in the brace. She takes her right hand, squeezes behind my left buttocks, and then rams me into the locker. I'm crashed between this metal steel locker and [the Child]. And then when you come off the locker, she smirks, and says, you should see your face right now. And then she finally lets me go.
>
> I told her that was inappropriate. You should have never touched me and we're going to see your face when I tell [the principal] what just happened because that was sexual harassment.

(Tr. 18-20.)

{¶ 7}    The Child testified about the events as follows:

> I said, hey, when she came, I think I put my hand on her back 'cause she had her arms like this, so I was — so I wouldn't trip. And I said, hey, and we were talking. I don't remember what it was. And I reached in and gave her a hug. She gave me a hug back. When she slipped back, I tripped on her foot, and that caused me to push her against the locker.

(Tr. 74.)

{¶ 8} When asked if she said anything to the victim after the incident, the Child stated that she did not remember. The Child denied intending to touch the victim other than to hug her and denied admitting to the dean of students that she grabbed the victim's buttocks. When asked on cross-examination, "Is it your position that you never touched [the victim's] butt?" the Child responded, "I didn't mean to." (Tr. 76.) She stated that her hand slipped, explaining "when she went to go back, I tripped on her foot, so that's what like, made me, like, fall on her. I didn't intentionally push her against the locker." (Tr. 77.)

{¶ 9} The victim testified that she only knew "of" the Child at the time of the incident but had never had her as a student. The Child testified that she knew the victim because the victim was related to one of the Child's friends. She also testified that every time she encountered the victim, they hugged. (Tr. 73.)

{¶ 10} After the incident, the victim informed the Child that her actions were inappropriate and constituted sexual harassment; she immediately made an internal report about the matter. At some point, the victim also filed a police report concerning the matter. The dean of students testified that during a meeting with the Child's parents, the Child admitted to grabbing the victim on the buttocks and pushing the victim into the locker.

### III. The Appeal

I. Appellant's adjudications are not supported by sufficient evidence to establish Appellant's purpose to sexually aro[u]se or gratify herself or her target as required for adjudication under the statute.

II. Appellant's adjudications are against the manifest weight of the evidence which failed to establish Appellant's purpose to sexually aro[u]se or gratify herself or her target as required for adjudication under the statute.

{¶ 11} The Child's assigned errors contest her adjudications as based on insufficient evidence and as against the manifest weight of the evidence.

{¶ 12} The trial court adjudicated the Child delinquent on two counts of sexual imposition in violation of R.C. 2907.06(A), which, at the time that this case was initiated, provided that "[n]o person shall have sexual contact with another . . . cause another . . . to have sexual contact with the offender when . . . (1) [t]he offender knows that the sexual contact is offensive to the other person . . . or is reckless in that regard." [1] "Sexual contact" is statutorily defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region . . . for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 13} In both her manifest-weight and sufficiency challenges, the Child contests the definition of sexual contact that requires that the purpose of her conduct was "sexually arousing or gratifying." Purpose is the relevant mental state for sexual contact; the specific intent behind the touching is "intended to achieve sexual arousal or gratification." *State v. Dunlap*, 2011-Ohio-4111, ¶ 25. "A person

---

[1] R.C. 2907.06 was amended on August 9, 2024, and then again on March 21, 2025. The parties did not address these amendments, and the portion under which the Child has been adjudicated delinquent has remained unchanged in substance. Therefore, our determination herein applies to the March 22, 2019 iteration of the statute.

acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). Moreover, the trier of fact may infer from the evidence presented whether the purpose of the defendant was sexual arousal or gratification. *State v. Tate*, 2013-Ohio-370, ¶ 19 (8th Dist.).

{¶ 14} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.* Proof of guilt may be supported "by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Rodano*, 2017-Ohio-1034, ¶ 35 (8th Dist.).

{¶ 15} The evidence presented by the prosecution was sufficient for the juvenile court to find that the specific intent behind the Child's actions was for sexual arousal or gratification. The video demonstrating the incident shows the child touching and hugging the victim before moving her hand down to the victim's buttocks. Testimony received at trial revealed that the child called the victim by her

first name, "gyrated" on the teacher's leg, squeezed her buttocks, pushed her into a locker, smirked, and made a comment about the teacher's reaction. Taken together and viewed in the light most favorable to the State, a reasonable factfinder could certainly infer that the Child's actions were motivated by sexual arousal or gratification.

{¶ 16} "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.""' (Emphasis omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins* at 387, quoting *Black's Law Dictionary* (6th Ed. 1990). In our manifest-weight review of a bench trial verdict, we recognize that the trial court serves as the factfinder, not the jury. *State v. Crenshaw*, 2020-Ohio-4922, ¶ 23 (8th Dist.). To warrant reversal from a bench trial under a manifest-weight-of-the-evidence claim, this court must determine that "the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Crenshaw* at *id.* "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which evidence weighs heavily against the conviction.'" *Id.*, quoting *Thompkins* at 387.

{¶ 17} Upon careful review of the record, we must conclude that this is not the exceptional case where the evidence weighs *heavily* against the delinquency adjudication. As discussed in our sufficiency analysis, the video and testimony

received constitute both direct and circumstantial evidence from which a factfinder may conclude that sexual arousal or gratification motivated the Child's actions.

{¶ 18} The assignments of error are overruled.

{¶ 19} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the juvenile court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN A. GALLAGHER, A.J., and
SEAN C. GALLAGHER, J., CONCUR