[Cite as *State v. Anderson*, 2026-Ohio-2027.]

# IN THE OHIO COURT OF APPEALS
## FIFTH APPELLATE DISTRICT
## MORROW COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 0004 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2024-CR-0090 |
| RANDY ANDERSON | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: May 29, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Kevin W. Popham, Judges

**APPEARANCES:** EDWIN M. BIBLER, for Plaintiff-Appellee; WILLIAM T. CRAMER, for Defendant-Appellant.

*King, P.J.*

{¶ 1}  Defendant-Appellant Randy Anderson appeals the June 2, 2025 judgment of conviction and sentence of the Morrow County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

### Facts and Procedural History

{¶ 2}  E.W. is the mother of O.P., the child victim in this matter. Anderson is the child's step-grandfather. When O.P. was 5 and six years old, Anderson and his wife often watched O.P. while E.W. worked.

{¶ 3}  On June 13, 2024, O.P. was to go to stay with the Andersons the following day and stay over the weekend. When O.P. learned this, she became upset and told E.W. she was afraid to go to her grandparent's home. O.P. told E.W. that the week before, Anderson had taken her to Walmart, taken her into the restroom and forced her to look

at his penis by grabbing her face and turning her face towards his genitals. He then told her not to tell anyone. O.P. was upset because she feared what would happen if she went back.

{¶ 4} E.W. contacted law enforcement and made a report. After O.P. understood she did not have to go to her grandparents, she disclosed further incidents including Anderson putting his hand into her underwear and rubbing her genitals on several occasions and showing her a video of a man performing cunnilingus on a woman and telling O.P. he wanted to do the same to her. O.P. remained frightened and upset about the matter until mother changed the locks on the doors of their home.

{¶ 5} Morrow County Sherriff's Office Detective James Coulter investigated the matter. He spoke with Anderson who stated some of the allegations were "trueish" but did not elaborate.

{¶ 6} Glorianna Adams of Knox County Job and Family Services spoke with Anderson at his request. Anderson stated the allegations were true, but were taken out of context. He alleged the incidents of touching all involved childcare. He further stated that he does watch pornography on his own time and that O.P. must have wandered into his room when he was watching without him noticing. He admitted O.P. saw his penis in a Walmart family restroom, but claimed it was her looking at him while he was using the restroom. He further admitted he warned O.P. not to tell but only because people would take it out of context. He claimed he was a father figure to O.P. and did not have a prurient interest in children.

{¶ 7} O.P. was referred to the Nationwide Children's Hospital Child Advocacy Center where she underwent a forensic interview and a medical exam based on her disclosures during the interview. O.P. disclosed Anderson put his hand in her underwear

and rubbed her privates on three occasions. She showed the interviewer how Anderson rubbed her vagina by gesturing with her hand in an up and down motion. She additionally told the interviewer about the Walmart incident and stated Anderson showed her a video of a naked boy kissing a girl's privates and said he wanted to do that to her. O.P. had a normal physical examination.

{¶ 8} On September 13, 2024, the Morrow County Grand Jury returned an indictment charging Anderson with one count of gross sexual imposition pursuant to R.C. 2907.05(A)(4) (victim less than 13 years of age) and one count of gross sexual imposition pursuant to R.C. 2907.05(A)(1) (by force or threat of force).

{¶ 9} Anderson pled not guilty to the charges and elected to proceed to a jury trial which took place on April 15-16, 2025. Immediately before trial the court found O.P. incompetent to testify without conducting a hearing. The state presented evidence from E.W., Detective Coulter, the doctor who performed O.P.'s medical exam, the forensic interviewer, Glorianna Adams, and Anderson's pretrial release officer. The jury viewed O.P.'s forensic interview. Anderson testified on his own behalf.

{¶ 10} After hearing the evidence and deliberating, the jury convicted Anderson as charged. He was subsequently sentenced to an aggregate total of ten years of incarceration and classified as a Tier II sex offender.

{¶ 11} Anderson filed an appeal and the matter is now before this court for consideration. He raises four assignments of error as follows:

I

{¶ 12} "THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED EVID.R. 601 AND R.C.2317.01 BY DECLARING THE CHILD TO BE INCOMPETENT TO TESTIFY WITHOUT AN IN-PERSON EXAMINATION."

II

{¶ 13} "THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS AND CRIM.R. 16(I) BY PREVENTING DEFENSE COUNSEL FROM COMMENTING ON THE FACT THAT THE VICTIM DID NOT TESTIFY DURING CLOSING ARGUMENTS AND BY INSTRUCTING THE JURY THAT IT COULD NOT CONSIDER THAT FACT DURING DELIBERATIONS."

III

{¶ 14} "THE TRIAL COURT ABUSED ITS DISCRETION BY PROVIDING A MISLEADING JURY INSTRUCTION ON THE ELEMENT OF SEXUAL GRATIFICATION THAT ERRONEOUSLY APPLIED A REASONABLE PERSON STANDARD TO SPECIFIC INTENT OFFENSES."

IV

{¶ 15} "THE CUMULATIVE IMPACT OF ERRORS IN THIS CASE DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL."

I

{¶ 16} In his first assignment of error, Anderson argues the trial court abused its discretion when it declared the child victim incompetent to testify without first conducting a hearing pursuant to Evid.R. 601 and R.C. 2317.01. While we agree, we find the error harmless.

**Standard of Review**

{¶ 17} At the outset, we note that Anderson did not object to the trial court's decision to declare the child victim incompetent without first conducting a hearing. Further, a discussion regarding the matter, which the trial court characterized as "lengthy," took place off the record. Transcript of trial (T.) at 21. If counsel for Anderson

did object during that discussion, no proffer was made on the record. We therefore review the matter for plain error.

{¶ 18} In *State v. Thomas*, 2017-Ohio-8011, at ¶¶ 32–34, The Supreme Court of Ohio clarified the plain error standard:

> Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

> Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) Id. at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

## Applicable Law

{¶ 19} The current version of Evid.R. 601 provides in relevant part:

(A) General rule. Every person is competent to be a witness except as otherwise provided in these rules.

(B) Disqualification of witness in general. A person is disqualified to testify as a witness when the court determines that the person is any of the following:

(1) Incapable of expressing himself or herself concerning the matter as to be understood, either directly or through interpretation by one who can understand him or her;

(2) Incapable of understanding the duty of a witness to tell the truth;

. . .

{¶ 20} R.C. 2317.01(A) states: "All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

{¶ 21} After discussion with counsel, the trial court found O.P incompetent to testify and stated that therefore, Evid.R. 807 applied. Transcript of trial (T.) at 21. That rule specifically addresses the testimony of child victims of sex crimes:

> (A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual activity performed, or attempted to be performed, by, with, or on the child or describing any act or attempted act of physical harm directed against the child's person is not excluded as hearsay under Evid.R. 802 if all of the following apply:
>
> (1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the

internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual activity or attempted sexual activity, or of the act or attempted act of physical harm directed against the child's person;

(2) The child's testimony is not reasonably obtainable by the proponent of the statement;

(3) There is independent proof of the sexual act activity or attempted sexual activity, or of the act or attempted act of physical harm directed against the child's person;

(4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness.

(B) The child's testimony is "not reasonably obtainable by the proponent of the statement" under division (A)(2) of this rule only if one or more of the following apply:

(1) The child refuses to testify concerning the subject matter of the statement or claims a lack of memory of the subject matter of the

statement after a person trusted by the child, in the presence of the court, urges the child to both describe the acts described by the statement and to testify.

(2) The court finds all of the following:

(a) The child is absent from the trial or hearing;

(b) The proponent of the statement has been unable to procure the child's attendance or testimony by process or other reasonable means despite a good faith effort to do so;

(c) It is probable that the proponent would be unable to procure the child's testimony or attendance if the trial or hearing were delayed for a reasonable time.

(3) The court finds both of the following:

(a) The child is unable to testify at the trial or hearing because of death or then existing physical or mental illness or infirmity;

(b) The illness or infirmity would not improve sufficiently to permit the child to testify if the trial or hearing were delayed for a reasonable time.

The proponent of the statement has not established that the child's testimony or attendance is not reasonably obtainable if the child's refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the statement for the purpose of preventing the child from attending or testifying.

(C) The court shall make the findings required by this rule on the basis of a hearing conducted outside the presence of the jury and shall make findings of fact, on the record, as to the bases for its ruling.

**The Trial Court Erred by Presuming the Child Incompetent**

{¶ 22} Recently, in *State v. Carson*, 2025-Ohio-2409, (10th Dist.) the Tenth District Court of Appeals examined a nearly identical challenge. In that matter the court found the trial court erroneously found the child victim's testimony not reasonably obtainable based on a presumption that she was incompetent to testify. *Id*. at ¶ 51. The court discussed *State v. Said,* 71 Ohio St.3d 473, 477 (1994), a case which Anderson also relies upon. *Said* held "a trial court must find that a declarant under the age of ten was competent at the time she made the statement in order to admit that statement under Evid.R. 807." *Id*. at ¶ 477; *Carson* at ¶ 47.

{¶ 23} But the holding in *Said* was overruled in part by *State v. Silverman*, 2009-Ohio-1576.  In that matter, the court held "a hearsay statement of a child declarant can be admitted under Evid.R. 807 without a determination of the child's competence to testify." *Id*. at ¶ 20, 34; *Carson* at ¶ 47. While the *Silverman* court found that *Said's* competency requirement defeated the purpose of Evid.R. 807, it left intact the requirement that the State demonstrate the child's testimony is not reasonably obtainable. Evid.R. 807(A)(2); *Carson* at ¶ 48. As noted by the *Carson* court "[the child's] competency to testify is relevant to the issue of whether her testimony is not reasonably obtainable by the state. Evid.R. 807(A)(2). In *Said*, the unavailability requirement was satisfied by the child's refusal to testify despite prompting from several individuals. *Said* at 474. Likewise, in

*Silverman*, Evid.R. 807(A)(2)'s unavailability requirement was met because the child was deceased prior to the commencement of the case. *Silverman* at ¶ 9."

{¶ 24} Here, as in *Carson*, the state failed to establish or state why O.P's testimony was not reasonably obtainable. After a discussion which took place off the record, the trial court found the child was presumed incompetent based solely on the State's representation "that she would not meet the rigors of the interview tomorrow to determine her competency." T. at 21.

## Harmless Error Due to Overwhelming Evidence

{¶ 25} While we find the trial court erred in finding Evid.R. 807 applicable without a demonstration by the State as to why the child's testimony was not reasonably obtainable, we find the error harmless.

{¶ 26} First, upon review of the record, we find the evidence against Anderson overwhelming. Before trial, Anderson admitted to both law enforcement and a JFS worker that what the child victim reported was true, but alleged the accusation was childcare which was taken out of context. T. 188-189; 267-268. Anderson also told his pretrial release supervision officer "I did what they said I did, just not for sexual gratification." T. 159.

{¶ 27} Anderson also took the stand in his own defense and again alleged the incidents involved childcare. On one occasion he stated his dog jumped on O.P. when she was running around in her underwear and scratched the top of her thigh where her thigh met her torso. He stated he put ointment on the scratch and had to move her underwear to one side to do so. T. 281. On another occasion, Anderson stated he looked at O.P.'s vagina by spreading her labia because O.P. said it hurt. T. 283-284. Anderson stated the

tissues were very red, so he sent O.P. to her grandmother so she could apply cream to O.P.'s genitals. As far as showing O.P. pornography, Anderson claimed O.P. must have wandered into his room without him noticing while he was watching pornography. He explained that O.P. likes to sneak up on people and try to scare them and reasoned that's what she must have been doing. He admitted he said "girl I wish I could do that to you," but claimed he was just speaking out loud in response to the video. He stated "I have no doubt [O.P.] saw what she saw, a man kissing a woman between the legs. But I did not intentionally show her the video." T. 287-290, 294. Anderson admitted he touched O.P. twice "one close to her vagina and the other one actually on her vagina, vaginal area was the only two times. It was done as a caregiver." T. 303. Yet mother testified the Andersons never reported O.P. being injured or ill while she was in their care. T. 142.

{¶ 28} Given Anderson's multiple admissions, the sole question before the jury was whether Anderson touched O.P. as a caregiver or for purposes of sexual gratification. The state introduced the evidence of Anderson showing pornography to O.P. and telling her he wished to do the same to her to establish the element of sexual gratification. Anderson has not challenged that ruling here on appeal. Anderson then put his own credibility at issue by taking the stand in his defense and from our reading of the record, did himself no favors by doing so.

{¶ 29} Second, we additionally find the error harmless because the child's statements were admissible pursuant to Evid.R. 803(2) and Evid.R. 803(4).

{¶ 30} Even though O.P. did not testify, the child's disclosure to her mother was admissible as an excited utterance as mother described O.P. becoming very upset when she learned she was to go to her grandparent's home. Evid.R. 803(2), T. 137. Moreover, it is well-settled that a child's competency need not be determined before admitting

statements pursuant to Evid.R. 803(4). *State v. Muttart*, 2007-Ohio-5267.  Thus O.P.'s statements to the forensic interviewer were admissible as statements made for purposes of medical diagnosis and treatment.

{¶ 31}  The first assignment is overruled.

II

{¶ 32} In his second assignment of error, Anderson argues the trial court erred when it prevented defense counsel from commenting on the fact that O.P. did not testify during closing argument, and by advising the jury they could not consider that fact.

{¶ 33}  We begin by noting that counsel did not object to the trial court's ruling. We therefore examine this assignment of error for plain error as well.

{¶ 34} It is difficult to ascertain the full content of the complained of error due to much of the conversation being deemed inaudible in the transcript. Anderson points us to page 324 of the transcript:

[Counsel for Anderson]: (inaudible) honor that statement has nothing to do with what he said she said. The burden is (inaudible). Never speaking to another person about it. (Inaudible) Nationwide Children's Hospital physician, social worker, anyone (inaudible) that there is somehow (inaudible) right now (inaudible) at all on any of the (inaudible) about this.

(Inaudible) or not. We never heard from her other than (inaudible) and no one asked her any clarifying questions.

The Court: Hey [counsel for Anderson]

[Counsel for Anderson]: Yes, Judge.

[A sidebar took place]

The Court: (Inaudible) talking about the testimony. It should probably be stricken. She couldn't testify incompetent. She didn't. Is inappropriate. [sic].

[Counsel for Anderson]: Okay.

{¶ 35} T. 324. The trial court then instructed the jury that it could not consider the above portion of counsel's argument.

{¶ 36} Anderson argues that because the instant matter does not involve overwhelming evidence of guilt, the error cannot be harmless. Anderson misrepresents the record by arguing he "admitted to one instance of touching but did so for medical purposes, and denied everything else." Brief of Appellant at 14. As outlined in the first assignment of error, however, this is not an accurate representation of the transcript. Anderson further argues that the case turned on the credibility of the victim, yet he admitted that everything the victim said was true or "truish," just taken out of context. T. 159, 189, 267. The only credibility at issue then, was Anderson's.

{¶ 37} Thus, assuming arguendo that the trial court's instruction was erroneous, as discussed under the first assignment of error, any error by the trial court in preventing counsel from commenting on the fact that the victim did not testify is harmless beyond a reasonable doubt due to overwhelming evidence of guilt.

{¶ 38} The second assignment of error is overruled.

III

{¶ 39} In his third assignment of error, Anderson argues the trial court's instruction to the jury regarding the element of sexual gratification was erroneous,

misleading, and applied a reasonable person standard to specific intent offenses. He therefore argues harmful error occurred.

## Standard of Review

{¶ 40} The giving of jury instructions is generally reviewed for an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338 (1993). When, as here, however, "[w]hether jury instructions correctly state the law is a legal issue that an appellate court reviews de novo." *State v. Echevarria*, 2018-Ohio-1193, ¶ 27 (8th Dist.) citing *State v. Dean*, 2015-Ohio-4347, ¶ 135. In either case, jury instructions must be reviewed as a whole rather than in isolation. *State v. Coleman*, 37 Ohio St.3d 286 (1993).

## The Instruction

{¶ 41} On count one of the indictment, the trial court instructed the jury as follows:

Count 1, the Defendant is charged with gross sexual imposition. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that in the time frame of July 17, 2022 to July 24, 2024 in Morrow County, Ohio, that the Defendant had sexual contact with another, who was not his spouse, when the other person was less than 13 years of age, whether or not the Defendant knew the age of the other person.

Sexual contact means the touching of an erogenous zone of another. That includes without limitation, thigh, genitals, buttock, pubic region, if the person is female, a breast, and that it is for the purpose of sexually arousing or gratifying either person.

Sexual arousal, a factfinder may infer the element of sexual gratification from the circumstances and nature of the contact. The Ohio Revised Code does not define sexual arousal or sexual gratification. However, section 2907.01(B) of the Ohio Revised Code contemplates any touching of certain described areas, which a reasonable person would perceive as sexually stimulating or gratifying.

In determining whether sexual contact occurred, the proper method for you is to permit you to infer from the evidence presented at trial whether the purpose of the Defendant was sexual arousal or gratification by his contact with those areas of the body described on 2907.01 of the Ohio Revised Code.

While the purpose of sexual arousal or gratification is an essential element of the offense of gross sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification.

{¶ 42} T. 344-345.

{¶ 43} The State requested the foregoing jury instruction pursuant to this court's decision in *State v. Croy*, 2024-Ohio-4638 (5th Dist.), appeal not allowed. T. 333-336. But *Croy* did not involve a challenge to jury instructions. Rather, *Croy* involved a manifest weight analysis in regard to the element of sexual gratification. We noted:

As it pertains to the gross sexual imposition charges, there is evidence sufficient to allow the jury to find that appellant engaged in "sexual contact" with E.C. and A.C. when he touched their vaginal areas. These body parts qualify as "erogenous zones" for purposes of R.C. 2907.01(B). Additionally, the manner of appellant's contact with each child was sufficient to allow the court to infer that his touching was undertaken for the purpose of sexual gratification. *State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 21, citing *In re Anderson*, 116 Ohio App.3d 441, 441, 688 N.E.2d 545 (12th Dist.1996). The *Tate* Court explains how the factfinder may infer the element of sexual gratification from the circumstances and nature of the contact:

The Ohio Revised Code does not define "sexual arousal" or "sexual gratification." *In re Anderson*, 116 Ohio App.3d 441, 443, 688 N.E.2d 545 (12th Dist.1996). However, R.C. 2907.01(B) "contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." *State v. Astley*, 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987). See also *Anderson* at 443.

In determining whether sexual contact occurred, "the proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01." *State v. Cobb*, 81 Ohio App.3d 179, 185,

610 N.E.2d 1009 (9th Dist.1991). "While the purpose of sexual arousal or gratification is an essential element of the offense of gross sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. Meredith*, 12th Dist. No. CA2004-06-062, 2005-Ohio-2664.

Whether the touching or contact was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature and circumstances of the contact. *Meredith,* citing *Anderson* at 443-444, and *State v. Mundy*, 99 Ohio App.3d 275, 289, 650 N.E.2d 502 (2d Dist.1994). In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making physical contact with the victim. *Meredith*, citing *Mundy* and *Cobb*. "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Cobb* at 185. *State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 18-20.

{¶ 44} *Id.* ¶¶ 29-30. In *Cory* we found the jury's verdict was not against the manifest weight of the evidence because the jury could reasonably infer from the nature of the contact that Cory committed the charged acts of molestation for the purpose of sexual gratification.

Anderson's Argument

{¶ 45} Anderson argues the trial court's instruction was an erroneous statement of law and misleading because it applies an objective reasonable person standard to a specific intent offense.

{¶ 46} As noted in our recitation of facts, Anderson was charged with two counts of gross sexual imposition. The trial court's instruction as to count one appears to be the instruction at issue since the trial court defined "purpose" for count two.

{¶ 47} Count one of the indictment charged Anderson with gross sexual imposition pursuant to R.C. 2907.05(A)(4) which proscribes sexual contact with a person less than 13-years of age. "Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, *for the purpose of* sexually arousing or gratifying either person." Emphasis added.

{¶ 48} In examining the same statute in 2011, the Supreme Court of Ohio found that while the victim's age is a strict liability element, the sexual contact element requires a mens rea of purpose. *State v. Dunlap*, 2011-Ohio-4111, ¶ 1. An act is done with purpose if it is the person's "specific intention to cause a certain result." R.C. 2901.22(A). Thus, to demonstrate sexual contact under R.C. 2907.01(B), the evidence must prove that "the touching [was] intended to achieve sexual arousal or gratification." *Id*. at ¶ 25.

{¶ 49} This court addressed a similar jury instruction in *State v. Lockhart*, 2008-Ohio-57. There, the trial court instructed the jury "the term sexual arousal or gratification contemplates any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying. So then it must be established in this case that at the time frame in question there was present within the mind of the defendant a

specific purpose of sexually arousing or gratifying himself or the other person." *Id.* at ¶ 45. We found the "reasonable person" language was given in error, but was ultimately harmless due to testimony of arousal from the victim. *Id.* at ¶¶ 46-47.

### The Jury Instruction was Erroneous but Harmless

{¶ 50} We likewise find in this matter that the "reasonable person" language was error. We must therefore decide if that error was harmless. "[A]n error may be harmless if the state's case against the accused is overwhelming." *State v. Ferguson*, 5 Ohio St.3d 160, 166 (1983), fn 5. "[T]he cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." *Id.*

{¶ 51} As discussed under the first assignment of error, between O.P.'s disclosures and Anderson's admissions, the evidence in this matter was overwhelming. We therefore find the jury instruction as to count one was harmless error.

{¶ 52} The third assignment of error is overruled.

IV

{¶ 53} In his final assignment of error, Anderson argues cumulative error denied his right to a fair trial. We disagree.

{¶ 54} Under the doctrine of cumulative error, "[s]eparately harmless errors may violate a defendant's right to a fair trial when the errors are considered together." *State v. Harris*, 2004-Ohio-3570, ¶ 40 (2d Dist), citing *State v. Madrigal*, 87 Ohio St.3d 378, 397. "In order to find cumulative error, we first must find that multiple errors were committed at trial." *Id.* "A conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 2012-

Ohio-2577 ¶ 223, citing *State v. DeMarco*, 31 Ohio St.3d 191, paragraph two of the syllabus (1987).

{¶ 55} We first note that Anderson's arguments under this assignment of error are that the trial court admitted extensive hearsay from the child and he only admitted to one incident of touching which was done for childcare purposes. But as discussed above, the child's statements to her mother and to the forensic interviewer were admissible even if the child did not testify. Further, as also discussed above, Anderson admitted to two incidents of touching and agreed that O.P. viewed pornography. While Anderson characterizes the case as a "credibility contest," Anderson never denied touching then five and six-year old O.P. Thus, the only credibility at issue was Anderson's.

{¶ 56} To the extent that we have found that claimed error did not rise to the level of plain error or was harmless, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 2004-Ohio-6235 at ¶ 185.

{¶ 57} The final assignment of error is overruled.

{¶ 58} For the reasons stated in our accompanying Opinion, the judgment of the Morrow County Court of Common Pleas is affirmed.

{¶ 59} Costs to Appellant.

By: King, P.J.

Hoffman, J. and

Popham, J. concur.